985 So.2d 255 (2008)
Connie D. FOSSIER, Dennis L. Fossier, Donald Cook, Keith Christofferson, Susanne Christofferson, Craig Adam, Peri Adam, Myron Lombard, Jeffrey Lombard, Dana Lombard, Catherine Lombard, Jack Meyers, Diane Meyers, Wesley Scott, Sharon Crovetto, Ronald Bertucci, Wendy Bertucci, Allan Molero, Michelle Molero, Bonnie Leblanc, Rodney D. Harris, Therese B. Harris, Sam Puleo, Theresa Puleo, Carl Puleo, Jean Puleo, Scott Chauvin, Staci Chauvin, Ray Slocum, Gina Slocum, Frank G. Horn, Jr., Robert J. Ricau, Gina P. Ricau, Robert J. Ricau, Jr.; Jennifer Cook, Michael Cook, Chester Cook, Dale Pinney, Debra Pinney, Marlene Fabacher, Robert Fabacher, Damon Fabacher, Raymond Evans, Terry Bolleter, Kathleen Rogers, Barbara Traylor, and Justin Ricau, Individually and on Behalf of their Minor Children
v.
JEFFERSON PARISH, Entergy Corporation, and C.R. Pittman Construction Company, Inc.
No. 07-CA-926.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 2008.
*256 Matthew P. Chenevert, Attorney at Law, New Orleans, Louisiana, for Appellants, Connie Fossier, et al.
Christopher Tankersley, Dennis J. Phayer, Scott O. Gaspard, Attorneys at Law, Metairie, Louisiana, for Appellee, The Parish of Jefferson.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
The plaintiffs, Connie Fossier, et al, appeal the trial court's grant of summary judgment in favor of defendant, the Parish of Jefferson. For the following reasons, we affirm.
Facts and Procedural History
Late on the evening of September 25, 2002, Tropical Storm Isidore traveled north from the Gulf of Mexico dumping a tremendous amount of rain on South Louisiana, especially Jefferson Parish. As much as 10.91 inches of rain fell in a twelve-hour period; as a result, streets, homes, and businesses were flooded. In the wake of the storm, the Parish President declared a state of emergency existed in the parish.
On September 24, 2003, more than fifty residents and/or owners of property on three streets[1] in unincorporated Jefferson Parish joined a lawsuit against the Parish of Jefferson,[2] claiming that the Parish's actions caused the streets and plaintiffs' houses to flood, which damaged the plaintiffs' property. The plaintiffs specifically allege that the Parish's drainage system altered the natural drainage pattern in their area, which led to more frequent flooding and diminished property values. Further, plaintiffs contend that the Parish knew or should have known that its electricity-driven drainage pump system would not function without electrical power yet failed to provide a back-up power system.
Jefferson Parish filed a Motion for Summary Judgment arguing that it is immune *257 from liability for damages pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:735, and the discretionary function doctrine, La. R.S. 9:2798.1. Specifically, the Parish argued that it was immune from liability for its actions in preparation for Tropical Storm Isidore, which was a declared state of emergency. While the Parish acknowledged that the statute provides for an exception to the immunity if there is willful or malicious conduct on the part of the state agency, it contended that there was no indication of willful or malicious conduct. The Parish contended that the lack of generators at the pump stations all over the Parish was due to budget constraints, not willful conduct.
The Parish further argued that it is immune from liability for all acts taken that are discretionary in nature under La. R.S. 9:2798.1. The Parish contended that the fiscal decisions in question, including, but not limited to the level of the Parish's storm drainage capacity and its use of backup power systems, are discretionary. Specifically, the Parish's financial resources dictated the level of flood capacity and the use of backup power systems that the Parish could afford.
In addition, the Parish argued that the flooding was caused by an act of God over which it had no control. Specifically, the rainfall from Tropical Storm Isidore was measured, within ¼ of a mile from the area in question, to be 10.91 inches in twelve hours, which exceeds the level of rain the drainage system could remove even if the pumps were working at maximum capacity. In common parlance, Tropical Storm Isidore was a "100 year flood," which exceeded the drainage capacity for Jefferson Parish's system in 2002.
In support of its position, the Parish attached the original Petition for Damages; First Amended Petition for Damages; Third Amended Petition for Damages; Fourth Amended Petition for Damages; sworn affidavit of Ali Pirsalehy, P.E., Director of Drainage Pump Stations for Jefferson Parish Department of Public Works; sworn affidavit of Michael G. Jackson, P.E., Executive Vice President of Burk-Kleinpeter, Inc. responsible for designing the Master Drainage Plan for Jefferson Parish; excerpt of the deposition of plaintiff, Allen Molero, Jr.; and a photograph of the drainage pump at N. Starrett operating during Tropical Storm Isidore.
In opposition to the Parish's motion for summary judgment, plaintiffs argued that the Parish devised a drainage system that "effectively walled in the triangular-shaped area bounded by Napoleon Avenue Canal, the Soniat Canal and North Sibley Street," creating a "bowl" to be emptied by electric drainage pumps, but neglected its duty under La. C.C. art. 667 to provide for continuous operation of said pumps during inclement weather. Plaintiffs contended that there were questions of fact as to whether the Parish's actions were protected under R.S. 29:735 and 9:2798.1. In support of its position, plaintiffs attached the depositions (with their exhibits) of Allan Molero, Jr, Robert Joseph Ricau, Myron L. Lombard, and Ali Pirsalehy and a summary of the costs paid by Jefferson Parish to rent generators to power the drainage pumps during Hurricane Lili.[3]
On December 8, 2006, the trial court conducted a hearing on the defendant's Motion for Summary Judgment. After taking the matter under advisement, the trial court granted Jefferson Parish's Motion *258 for Summary Judgment on January 31, 2007. In her Reasons for Judgment, the trial judge stated that the Parish's decisions regarding the drainage system's flood capacity and the installation of backup power systems "represent fund allocation choices which. . . . require consideration of public safety and property protection concerns, and are therefore, well grounded in social and economic policy." The trial judge found that these decisions were within the realm of discretionary functions and concluded that Jefferson Parish was immune from liability under La. R.S. 9:2798.1.
On appeal, plaintiffs argue that the trial court erred in granting summary judgment in favor of Jefferson Parish because "as a matter of law, the Parish became absolutely liable for any flooding caused by the drainage system." The plaintiffs contend that the Parish assumed responsibility for drainage by creating a system of floodwalls, berms, canals, and pumps. We disagree.
La. R.S. 9:2798.1, entitled "Policymaking or discretionary acts or omissions of public entities or their officers or employees," provides:
A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.
In Cormier v. T.H.E. Ins. Co., 98-2208 (La.9/08/99), 745 So.2d 1, the Louisiana Supreme Court explained the Discretionary Immunity doctrine as follows:
Generally, `Discretionary Immunity' under La.Rev.Stat. 9:2798.1 applies to specific fact situations which satisfy the rule enunciated in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Under Berkovitz, the court must first consider whether the government employee had an element of choice and his course of action was not specifically prescribed by the statute, regulation, or policy. Conduct cannot be discretionary unless it involves an element of judgment or choice. 108 S.Ct. at 1958. Thus, discretionary immunity will not apply when a specific course of action is prescribed as the employee has no rightful option but to adhere to the directive. Id. On the other hand, when discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, *259 or political activity. Kniepp v. City of Shreveport, 609 So.2d 1163 (La. App. 2 Cir.1992), writ den. 613 So.2d 976 (La.1993). If it is, then the doctrine applies and the employee or agency is insulated from liability; if it is not, the employee or agency is liable for any negligence. Simeon v. Doe, 618 So.2d 848 (La.1993). (Partial citations omitted).
Id. at 6-7. A summary judgment is appropriate when there remains no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Summary judgments are favored in the law and the rules should be liberally applied. Carr v. Wal-Mart Stores, Inc., 00-896 (La.App. 5 Cir. 10/31/2000), 772 So.2d 865, writ denied, 00-3247 (La.1/26/01), 782 So.2d 636. The summary judgment procedure shall be construed to accomplish the ends of just, speedy, and inexpensive determination of allowable actions. La. C.C.P. art. 966; Perricone v. East Jefferson General Hospital, 98-343 (La.App. 5 Cir. 10/14/98), 721 So.2d 48.
The mover bears the burden of proof; however, the mover need only to "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. . . ." La. C.C.P. article 966 C(2). Once the mover has made a prima facie showing that the motion shall be granted, the burden shifts to the adverse party to present evidence demonstrating that material factual issues remain. Perricone v. East Jefferson General Hosp., supra.
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp. Inc., supra. Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Carr v. Wal-Mart Stores, Inc., supra.
Applying the Berkovitz test to the facts of the instant case, we find that the decisions made in this case involved elements of judgment and choice, which means the Parish's actions were discretionary. Further, we find that Jefferson Parish has articulated social, economic and political considerations surrounding its decisions regarding the drainage system for this specific area, including financial limitations, safety considerations, equipment availability, and feasibility. We cannot say that the plaintiffs presented evidence demonstrating that material factual issues remain regarding whether Jefferson Parish is immune from liability under La. R.S. 9:2798.1. Accordingly, we find that Jefferson Parish was entitled to judgment as a matter of law. The trial judge's ruling is affirmed. Costs of this appeal are assessed against the plaintiffs/appellants.
AFFIRMED.
NOTES
[1] The area in question is bounded on the south by Canal No. 4 (commonly referred to as the West Napoleon Canal), on the east by the Soniat Canal, on the north by Veterans Highway, and on the west by Mississippi Avenue. The streets that were particularly affected are N. Cumberland, N. Starette, and N. Atlanta.
[2] The plaintiffs also sued Entergy Corporation and C.R. Pittman Construction Company; both defendants have been dismissed from this lawsuit. Further, in this appeal, plaintiffs seek review of the grant of the Parish of Jefferson's Motion for Summary Judgment so we will address the litigation only as it pertains to the Parish.
[3] Hurricane Lili made landfall along the south-central coast of Louisiana near Intracoastal City on October 3, 2002, which was only one week after the storm at the center of this litigation.