MARION F. EDWARDS, Judge.
 

 | aPlaintiffs/appeIlants, Ruche J. Marino (“Marino”), et al., appeal the grant of a summary judgment by the Twenty-Ninth Judicial District Court dismissing their claims with prejudice. We affirm as follows.
 

 Marino’s original petition alleged that, on April 25-26, 2004, there was a heavy rainfall in Norco, Louisiana, and that, as a result of the negligence of the Parish of St. Charles (“the Parish”) in maintaining its drainage system, homes and property were damaged and/or destroyed by flooding. Numerous plaintiffs were named in subsequent amending petitions. The Parish answered the petition and ultimately filed a Motion for Summary Judgment, alleging that it was immune from the action under La. R.S. 29:735, the Louisiana Homeland Security and Emergency Assistance and Disaster Act, as well as under La. R.S. 9:2798.1, Discretionary Function Immunity, and the “Act of God” defense. Following a hearing, the trial court granted judgment in favor of the Parish, finding that La. R.S. 9:2798.1 was applicable and provided immunity. Marino appeals.
 

 Marino argues that the Discretionary Function Immunity Act is not so broad as to grant the Parish the overall umbrella of immunity applied in the present case, and that the court erred in finding there were no genuine material issues of fact. Marino also argues that any such reading of governmental functions immunity would be unconstitutional.
 

 |3On appeal, Marino urges that the statute does not apply to operational, rather than discretionary negligence, and that the present case involves the former. According to Marino, the Parish failed to clean out and repair the culverts, failed to keep gaps in the hurricane levee free from trash and debris, and failed to have adequate operators on the scene to maintain the pumps. In the petition, Marino alleged that, among other things, Clayton Pond is adjacent to the Marino property, and that the pond holds water, one-half of which goes to the pumping station and the other to openings which flow into the pond. According to Marino, there is no control valve and the pumps are inefficient for the quantity of water present. Marino averred that the culvert for the pond on Airline Highway was clogged, that he notified the Parish of such, but that it was not cleaned, and the drainage pipe under Airline Highway collapsed.
 

 It was further alleged that a new levee being constructed on the north side, the Hurricane Protection Levee, constricted the flow of water on the day in question because of debris in the levee gaps, and that the Parish altered the flow of water in such a fashion that everything was blocked, causing the flood.
 

 In connection with the Motion for Summary Judgment, the Parish introduced several exhibits. The affidavit of Michael A. Ports (“Mr. Ports”), a licensed professional engineer with extensive experience
 
 *929
 
 in the design of stormwater drainage systems, was admitted, along with a copy of his report on “Hydrologic and Hydraulic Investigations and Findings.” Mr. Ports reviewed the drainage system in Norco, along with schematics, aerial photographs, and survey information, as well as Parish reports and rainfall information. He also observed the Norco system itself. Mr. Ports determined that the Norco system was designed and built to handle the volume of water produced by a 10-year, 24-hour rain event, common for municipalities and parishes and meeting the standard of care for the profession. The 10-year, 24-hour rainfall for Norco is 9.0 inches. Portions of pNorco received 12.97 inches of rain with the average across the entire drainage basin of 10.94 inches for the 15-hour period of 9 a.m. to midnight. Therefore, the drainage system received 1.94 more inches of rain than it was designed to accommodate, and, moreover, the additional rain fell during a much shorter period of time. By Mr. Ports’ calculation, the storm actually dumped rain onto the drainage system at almost twice the rate for which it was designed.
 

 The 100-year, 15-hour amount of rainfall for Norco is 10.9 inches. Therefore, the Norco drainage system experienced the 100-year, 15-hour rainfall event. The rain greatly exceeded the ability of the drainage system to pump it out and resulted in widespread flooding. The depth of the flooding was not affected by the temporary loss of one pump for 30 to 60 minutes. The Norco drainage system was operating efficiently. Clayton Pond, a storage pond in the Norco drainage basin, has its own discharge culverts under Airline Highway. The heavy rainfall caused the Airline Highway embankment to erode and “slough off’ into the drainage ditch, blocking the flow of water from Clayton Pond north under Airline Highway to the New Norco Pumping Station. Airline Highway and its embankment, as well as all culverts under it, are the property and under the care and control of the State of Louisiana, Department of Transportation and Development (“DOTD”). After the rain, the Parish contacted DOTD to repair the eroded embankment and unblock the culvert. On inspection, it revealed a deflection in the middle of the culvert downward, obstructing it by approximately 30 percent
 

 The Bayou Trepagnier Pumping Station, built along the Lake Pontchartrain Hurricane Protection Levee, north of the other stations, was not completed at the time of the storm. The top one-third to one-half of a “gate” in the levee, open during the event, was blocked, allowing the water to pond north of the other two Norco pumping stations between the old and new levees. At no time did this | ¡¡ponded water go back to the Norco drainage basin or affect the operation or efficiency of the Norco pumps.
 

 In his report attached to his deposition, Mr. Ports stated that “the flooding in question was caused by a rainfall that produced runoff far in excess of the design capacity of the drainage system. Furthermore, all three of the pump stations operated as designed and intended.”
 

 Also attached to the Motion for Summary Judgment was the affidavit of Gregory E. Bush (“Mr. Bush”), director of the Parish’s Department of Public Works and Wastewater at the time of the flood. He attested that the storm appeared to have stalled over Norco, which had the heaviest rainfall. On-call personnel responded to the rainfall by 11:00 a.m. and other personnel were called throughout the day to respond to the Norco emergency. Mr. Bush ordered portable, temporary pumps to be placed along Engineers Canal and at the Norco Pumping Stations. One of the electrical pumps at the New Norco Pumping
 
 *930
 
 Station was lost for 5 to 30 minutes. Upon noticing that Clayton Pond was not draining properly due to the erosion of the Airline Highway embankment, Mr. Bush ordered a Parish crew to cut a ditch to relieve the blockage. Repairs begun by DOTD revealed the deflection of the culvert (as described by Mr. Ports’ affidavit, supra). Mr. Bush also described the “gate” in the new levee as did Mr. Ports, and verified that no ponded water returned to the Norco drainage system. Finally, he stated that all stormwater drainage canals are cleaned routinely as part of periodic maintenance. An executive order declaring a state of emergency was declared at 6:30 p.m. on April 25, 2004.
 

 In opposition to the Motion for Summary Judgment, Marino submitted copies of a performance review of the April 25, 2004 rainfall event prepared by the Parish’s Department of Public Works, Department of Emergency Preparedness and Ifithe Department of Planning and Zoning. These documents were not attached to any affidavits.
 

 The standard for review of a ruling on a summary judgment is de novo.
 
 [1]
 
 Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). A genuine issue exists where reasonable persons, after considering the evidence, could disagree. A fact is “material” if it is one that would matter at trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits.
 
 [2]
 

 Pursuant to La. C.C.P. art. 966(B), the burden of producing evidence at the hearing on the motion for summary judgment is on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.
 
 [3]
 
 Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
 
 [4]
 

 La. C.C.P. arts. 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. Thus, a document that is not an affidavit or sworn to in any way, or is not certified or attached to an 17affidavit, has no evidentiary value on a motion for summary judgment.
 
 [5]
 
 Therefore, in meeting the burden of proof, unsworn or unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and will not be considered; attaching such documents to a motion for summary judgment does not
 
 *931
 
 transform such documents into competent summary judgment evidence.
 
 [6]
 
 For this reason, we do not consider the copies of the performance reviews attached to Mari-no’s opposition.
 

 Marino alleges the Parish was negligent in its operation of the drainage system, i.e., that the Parish had a duty to keep the culverts clean and clear, to maintain them, and to operate the pumps in an effective and proper manner.
 

 La. R.S. 9:2798.1 provides:
 

 A. As used in this Section, “public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instru-mentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
 

 B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
 

 C. The provisions of Subsection B of this Section are not applicable:
 

 (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
 

 (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
 

 |sIn determining “Discretionary Immunity” under La. R.S. 9:2798.1, the court must first consider whether the government employee had an element of choice and his course of action was not specifically prescribed by the statute, regulation, or policy.
 
 [7]
 
 Conduct cannot be discretionary unless it involves an element of judgment or choice. Thus, discretionary immunity will not apply when a specific course of action is prescribed as the employee has no rightful option but to adhere to the directive.
 
 [8]
 
 On the other hand, when discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, or political activity. If it is, then the doctrine applies and the employee or agency is insulated from liability; if it is not, the employee or agency is liable for any negligence.
 
 [9]
 

 In the present case, it is undisputed that the Norco drainage system meets the standard of care and is in use by a majority of Louisiana municipalities and parishes. It is further undisputed that the Norco system experienced a 100-year event dumping rain at almost twice the rate for which the drainage system was designed. Mari-no alleges that debris collected in the gate at the new Hurricane Protection Levee affected the level of flooding. However, the evidence submitted by the Parish establishes that any such debris had no ef-
 
 *932
 
 feet whatsoever on the flooding at issue here. Regarding the drainage culverts and structures under Airline Highway, it is undisputed that ownership and control of these is vested with the State of Louisiana, rather than the Parish.
 

 As in
 
 Fossier,
 
 applying the test to the facts of the instant case, we find that the decisions made in this case involved elements of judgment and choice, which means the Parish’s actions were discretionary. The Parish has shown the necessary social and economic consideration surrounding its decisions regarding the choice |fland operation of the drainage system for this specific area, including the fact that its system met the necessary standards.
 

 Further, as the Parish points out, there is nothing in the record to dispute the finding by Mr. Ports that the excess runoff caused by the intense rain caused the flooding, rather than any action taken by the Parish.
 

 The longstanding jurisprudential rule of law in Louisiana is litigants must raise constitutional attacks in the trial court, not the appellate courts, and the constitutional challenge must be specially pleaded and the grounds for the claim particularized.
 
 [10]
 
 None of the exceptions to this general rule apply in the present case.
 

 Accordingly, the Parish was entitled to summary judgment. Costs of this appeal are taxed to the appellants.
 

 AFFIRMED.
 

 [1]
 

 .
 
 Bayou Fleet Partnership v. Phillip Family, LLC,
 
 07-581 (La.App. 5 Cir. 2/6/08), 976 So.2d 794,
 
 writ denied,
 
 08-0721 (La.5/30/08), 983 So.2d 899.
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 .
 
 Cyprien v. Bd. of Supervisors ex rel. Univ. of La. Sys.,
 
 08-1067 (La.1/21/09), 5 So.3d 862.
 

 [4]
 

 .
 
 Id.
 

 [5]
 

 .
 
 Bunge N.A., Inc. v. Bd. of Commerce & Indus. and La. Dep't of Econ. Dev.,
 
 07-1746 (La.App. 1 Cir. 5/2/08), 991 So.2d 511,
 
 writ denied,
 
 08-1594 (La.11/21/08) 996 So.2d 1106.
 

 [6]
 

 .
 
 Id.
 
 (citing
 
 Williams v. Mem'l Med. Ctr.,
 
 03-1806, pp. 14-15 (La.App. 4th Cir.3/17/04), 870 So.2d 1044, 1053,
 
 writ denied,
 
 04-0963 (La.6/4/04), 876 So.2d 93).
 

 [7]
 

 .
 
 Fossier v. Jefferson Parish,
 
 07-926 (La.App. 5 Cir. 4/15/08), 985 So.2d 255 (citing
 
 Cormier v. T.H.E. Ins. Co.,
 
 98-2208 (La.9/08/99), 745 So.2d 1).
 

 [8]
 

 .
 
 Id.
 

 [9]
 

 .
 
 Fossier, supra
 
 (citing
 
 Kniepp v. City of Shreveport,
 
 609 So.2d 1163 (La.App. 2 Cir. 1992),
 
 writ denied,
 
 613 So.2d 976 (La.1993), and
 
 Simeon v. Doe,
 
 618 So.2d 848 (La.1993)).
 

 [10]
 

 .
 
 Unwired Telecom Corp. v. Parish of Calcasieu,
 
 03-0732 (La. 1/19/05), 903 So.2d 392 (citing
 
 Vallo v. Gayle Oil Co., Inc.,
 
 94-1238 (La.11/30/94), 646 So.2d 859, 864).