DANIEL L. DYSART, Judge.
| jPlaintiff Martha Hohensee, appeals a partial summary judgment granted in favor of Raymond C. Bergeron, Jr., and Raymond C. Bergeron, Jr., Architects, *885 L.L.C. The ruling dismissed Bergeron from the case in his individual capacity, and dismissed plaintiffs claim against his company insofar as its liability for any construction-related issues. Hohensee also appeals the trial court’s grant of a motion to strike her expert’s report from the record. For the reasons that follow, we affirm the judgment of the trial court.
BACKGROUND:
Martha Hohensee sought the services of Raymond Bergeron, an architect, to design plans for her new home. Bergeron informed Hohensee that he did not do residential designs, but referred her to Sean Turner, an architectural designer (but not an architect) and contractor. Hohensee met with Turner, and subsequently he, through his business, Turner Design Collaborative (“TDC”), designed plans for Ho-hensee’s new home. As Turner was not a licensed architect or civil engineer, he 12asked, with Hohensee’s knowledge, Ber-geron to stamp the design plans so that Hohensee could obtain a building permit from the City of New Orleans.
Before the permit was granted, the City sent Bergeron a letter indicating that a few minor changes had to be made to the plans before the City would issue the permit. Bergeron gave the letter to Turner, who made the changes. Thereafter, Ho-hensee obtained the permit and construction began.
In addition to the contract Hohensee signed with TDC, she entered into a contract with Modern Classic Concepts, L.L.C. (“MCC”). Sean Turner and Charles Sexton were members of that limited liability company. During construction, changes were made to the original design, particularly adding a second sub-floor and enclosing the crawl space beneath the house with brick.[1] Both Turner and Bergeron testified that Bergeron was never consulted about these changes to the original plans. Post-construction inspections also revealed that the house was not constructed at the proper base elevation.
Hohensee filed suit against Sean Turner, individually; TDC; Bergeron, individually; MCC; and various insurers. She later amended her petition to add Raymond C. Bergeron, Jr.—Architects, LLC, and Charles Sexton.[2]
Bergeron, individually, and Raymond C. Bergeron, Jr.—Architects, LLC (“RCB-Architects”), filed a motion for partial summary judgment arguing that |sthere is no legal basis to hold Bergeron individually liable for any alleged actions of his professional limited liability company, and that neither he nor his company are liable for any construction-related issues in this case. Specifically, he alleges that he is not Hable for any components of the house that were: 1) not present on the plans, but constructed, or, 2) not constructed according to the plans. The motion acknowledges that because Hohensee’s experts have identified “deficiencies” with the design, genuine issues of fact exist. However, movers argue that their motion is limited to liability for construction of the house, not design.[3]
*886 The trial court granted partial summary judgment in favor of Bergeron, individually, and to RCB—Architects for constructed-related claims only.
Additionally, Bergeron filed a Motion to Strike the deposition of Roger Bailey, an expert retained by Hohensee, which was attached to her memorandum in opposition to the motion for partial judgment. Ber-geron argued that the deposition testimony was hearsay; the trial court agreed and granted the motion to strike.
Hohensee appeals arguing that the trial court erred as genuine issues of material fact exist as to RCB—Architects’ involvement in the construction of the house and as to Bergeron’s individual liability. Further, she contends the tidal court erred in striking the report of her expert.[4]
^DISCUSSION:
MOTION TO STRIKE
Hohensee argues that the trial court erred in striking the report of one of her expert’s, Roger Bailey, which was attached to her opposition to the motion impartial summary judgment. Bailey’s deposition was attached to defendants’ motion without the report. Hohensee claims that without the report, Bailey’s deposition testimony is distorted. Further, she argues that the report was certified and authenticated by Bailey in his deposition testimony and in an affidavit which was made a part of the trial court record prior to the summary judgment proceedings.
Defendants argue that the report is unauthenticated hearsay and is thus impermissible evidence for purposes of opposing a summary judgment.
First, we note that “evidentiary rulings by the trial court are reviewed under an abuse of discretion standard.” 727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C., 12-1014, p. 19 (La. App. 4 Cir. 8/21/13), 122 So.3d 1152, 1163. Second, generally, a report prepared by an expert is not admissible because it is hearsay. See Guzzardo v. Town of Greensburg, 563 So.2d 424, 426 (La.App. 1st Cir. 1990). Unless an attesting affidavit is attached, expert reports standing alone, are not admissible. See Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, pp. 18-19 (La.2/29/00), 755 So.2d 226, 237 (“Article 967 of the Louisiana Rules of | sCivil Procedure does not preclude from consideration expert opinion testimony in the form of an affidavit or deposition submitted in support of or opposition to a motion for summary judgment.”)(emphasis added.).
“[Unverified documents, such as letters or reports, annexed to motions for summary judgment are not self-proving and therefore will not be considered; ‘merely stapling them to a motion for summary judgment’ does not “magically” transform such documents into competent summary judgment evidence.” Williams v. Memorial Medical Center, 03-1806, p. 14 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1053, citing Schully v. Hughes, 00-2605, p. 5 (La.App. 4 Cir. 6/5/02), 820 So.2d 1219, 1222. Contrary to Hohensee’s assertion, attaching the report to her expert’s deposition does not create competent summary judgment evidence. Marino v. Parish of St. Charles, 09-0197, p. 7 (La.App. 5 Cir. 10/27/09), 27 So.3d 926, 930-931.
Our review of Bailey’s deposition testimony reveals that, although he was examined thoroughly as to the contents of his report, it was not attached or made a part of Bailey’s testimony. As such, Bailey’s report is not competent evidence suitable for opposing a motion for summary judg *887 ment, as it is unsworn. The expert report itself is not self-proving. Id. 09-197, p. 7, 27 So.3d at 930.
Thus, applying the above principles, we do not find that the trial court abused its discretion in granting defendants’ motion to strike Bailey’s report.
|flMOTION FOR PARTIAL SUMMARY JUDGMENT
Hohensee also argues that the trial court erred in granting defendants’ Motion for Partial Summary Judgment, dismissing Bergeron in his individual capacity, and RCB Architects relative to constructed-related issues.
A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. art. 966 B(2). The movant bears the burden of proof. La. Code Civ. Proc. art. 966 C. “However, if the movant will not bear the burden of proof at trial ..,, the movant’s burden” is “to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense,” La.Code Civ. Proc. art. 966 C(2). “Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La.Code Civ, Proc. art. 966 C(2).
To determine whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria employed by the trial court. Quantum Resources Mgmt., L.L.C. v. Pirate Lake Oil Corp., 12-1472, p. 5 (Laj 73/19/13), 112 So.3d 209, 214; Garrrison v. Old Man River Esplanade, 13-0869, p. 3, 133 So.3d 699, 701; La.Code Civ. Proc. art. 966.
Defendant, RCB-Architects, moves for partial summary judgment as to construction-related issues only, arguing that the facts were undisputed that RCB-Architects was not hired for, responsible for, or retained to perform any tasks related to construction of the house. Bergeron also argues that because he is a member of RCB—Architects, which is a limited liability company, he cannot be personally liable under Louisiana law.
Hohensee argues that RCB—Architects and Bergeron, individually, are liable for construction-related defects in her house based on her interpretation of La. R.S. 37:152 B and 46 La. Admin. Code Pt. I, 1313 and 1319.[5]
Bergeron and RBA—Architects set forth in their memorandum in support that there is an absence of factual support for Hohensee’s contention that Sean Turner and Bergeron or his company had entered into a design/build agreement. Such evidence would be necessary to demonstrate a breach of the rules listed in 46 La. Admin. Code Pt. I, 1313.[6] They offer proof that Bergeron did not participate in lathe actual construction of the house, only *888 in its design. The involvement in the design was limited to reviewing the | pdesign plans drawn by Turner, and affixing Ber-geron’s architect seal to the plans. Ho-hensee offers no proof that Turner and Bergeron had a partnership or corporation created to offer a combination of design and construction services. Thus, application of 46 La. Admin. Code-Pt. I, 1319 is unwarranted.
As such, Hohensee has failed to demonstrate that she will be able to satisfy her evidentiary proof at trial.
We agree and find summary judgment was appropriate as to the construction-related issues as they relate to both defendants.
Hohensee also argues that Berger-on should be held individually liable for the damages to her home based on the language of La. R.S. 37:152 B, which provides that “no architect shall affix his seal or stamp or permit it to be affixed to any specification, drawing, or other related document which was not prepared either *889 by him or under his responsible supervision.”
It is undisputed that Hohensee requested Bergeron’s architectural services for designing her house, and that Bergeron declined, but referred her to Turner. Also, as stated infra, it is undisputed that Bergeron reviewed the original design plans drawn by Turner, and affixed his seal to the plans, as a favor to Turner, who was not an architect.
Evidence in support of the motion for summary judgment revealed that Berger-on did visit the construction site once or twice by chance, but it was not a professional call.
| mHohensee testified that she had no dealings with Bergeron other than the initial contact to ask him to design her house. When asked if, in her opinion, she had a verbal contract with Bergeron, she answered “no.” Hohensee testified that she never paid Bergeron for any services. Ho-hensee’s contention that Bergeron is responsible for the damage to her house is based upon Bergeron’s affixing his architect’s seal on the house plans, and her testimony that Sean Turner told her that he consulted Bergeron on a regular basis. She testified that Turner told her that “Ray said this or Ray said that,” when asked about how to proceed with the construction. She also offered evidence that Charles Sexton testified in his deposition that Turner informed him that Bergeron had visited the construction site more than once. We find that both Hohensee’s testimony as it regards Turner’s statements, and Charles Sexton’s testimony are inadmissible hearsay, and therefore not proper support for a motion for summary judgment. Notwithstanding, we find that if Hohensee’s conversations with Turner and Sexton were admissible, the alleged content of those conversations would not rise to the level of support necessary to prove a contractor/owner relationship between Ho-hensee and Bergeron.
In contrast, Turner testified that he did not consult with Bergeron prior to making major changes to the design of the house, that is, the original design to which Ber-geron affixed his seal.
PERSONAL LIABILITY
lnHohensee also argues that Ber-geron breached his professional duty as a licensed Louisiana architect, which permits piercing the corporate veil, and exposes Bergeron to personal liability.
Pursuant to the provisions of La. R.S. 12:1320 B and C, a member, manager, employee or agent of an LLC cannot be hable in such capacity for the debt, obligation or liability of such entity and such persons are not proper parties to a proceeding against the LLC. However, La. R.S. 12:1320 D is the exception to the protection afforded such persons in instances where a claim is made arising out of the breach of a professional duty. Ho-hensee relies on Matherne v. Barnum, 11-0827, p. 8 (La.App. 1 Cir. 3/19/12), 94 So.3d 782, 788, in which the First Circuit held that "... Subsection D of this same statute clearly provides a cause of action against a member of a limited liability company because of any breach of professional duty.... ” She further relies on Ogea v. Merritt, 13-1085, p. 12 (La.12/10/13), 130 So.3d 888, 898, which held that “recovery can be had from an individual member for ‘any breach of professional duty[,]’ ” thereby recognizing an exception to the limited liability provisions of La. R.S. 12:1320. The Ogea court found that the meaning of the word “professional” was meant to include any persons entitled to form professional corporations under Louisiana’s corporate laws, such as physicians, dentists, accountants, chiropractors, nurses, architects, optometrists, *890 psychologists, veterinarians and architectural-engineering professionals.[7] Ogea, 13-1085, p. 13, 130 So.3d at 898. Thus, Hohensee argues | iathat because Bergeron is a licensed architect, he is not immune from personal liability for debts, obligations and liabilities of his LLC, when sued for a breach of his professional duty.
Members of a limited liability company generally may not be assessed with personal liability for the debts and obligations of the limited liability company to third parties absent proof of fraud. See La. R.S. 12:1320 B; Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 11-2254, p. 5 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, 598. Thus, a limited liability company member is not a proper party in any proceeding against the LLC. La. R.S. 12:1320 B; Prasad v. Bullard, 10-291, p. 6 (La.App. 5 Cir. 10/12/10), 51 So.3d 35, 40. There are, however, certain limited exceptions to the rule of non-liability of shareholders for the debts of a corporation. These exceptions allow a court to ignore the legal fiction and hold the individual shareholders liable. Charming Charlie, 11-2254, p. 6, 97 So.3d at 599.
Third parties can bring claims against a member for “any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.” La. R.S. 12:1320 D.
Accordingly, for Hohensee to succeed in holding Bergeron personally liable, she must prove that either Bergeron perpetrated a fraud against her or that he breached his professional duty to her by negligence or some other wrongful conduct.
1^Bergeron argues that Hohensee did not sustain her burden of proving that he was personally guilty of negligence or wrongful conduct with regard to the original design of the house.[8] To support his motion, Bergeron attaches the affidavit of Donald Maginnis, an expert in architecture. Maginnis stated in his affidavit that the stamped plans, which he personally reviewed, met the applicable City of New Orleans code requirements, that the plans contained sufficient detail to allow the contractor to build the project as designed, and that Bergeron met the standard of care in reviewing and stamping the drawings made by Turner. Maginnis also testified that Turner deviated from the plans in significant ways, which led to construction deficiencies.
In response, Hohensee offers no admissible evidence to rebut the testimony of Maginnis.
In Ogea, the Supreme Court explains that the Civil Code “suggests an example of when a person might act outside the capacity of a member of an LLC and, thereby, undertake a ‘personal duty,’ the negligent or wrongful breach of which could subject the member to personal liability.” Ogea, 13-1085, p. 23, 130 So.3d at 904.
The existence of a duty is a question of law. Ogea, 13-1085, p. 24, 130 So.3d at 905, citing Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 292 (La.2/22/93). “Simply put, the inquiry is whether the plaintiff has any |ulaw-statutory, jurisprudential, or arising from *891 general principles of fault-to support his claim.” Id.
Hohensee has offered no proof that Ber-geron owed her a personal duty. Although Bergeron stamped the plans for Hohensee’s house, there is no evidence in the record that Bergeron breached any professional duty as an architect. As in Ogea, Bergeron’s affixing his seal was in furtherance of the Hohensee’s contract with Turner, a contract to which Bergeron was not a party. Conduct taken in furtherance of the legitimate goals of that contract does not subject Bergeron to personal liability. See Ogea, 13-1085, p. 25, 130 So.3d at 905-06.
Thus, for the reasons stated herein, we affirm the partial summary judgment granted by the trial court, dismissing Raymond C. Bergeron, Jr., in his individual capacity, and dismissing Hohensee’s claims against RCB—Architects insofar as its liability for any construction-related issues.
AFFIRMED
LOVE, J., concurs in part and dissents in part and assigns reasons.

. Enclosing the crawl space apparently caused the floors to buckle in the house, which precipitated the second change of adding a subfloor to correct the problem.

. Turner and Sexton filed motions for summary judgment arguing that they could not be held personally liable for Hohensee's alleged damages. The trial court granted summary judgments, but this Court reversed finding that genuine issues of material fact existed, See Hohensee v. Turner, 13-0615 (La.App. 4 Cir. 1/22/14), 133 So.3d 141.

.The Motion for Summaiy Judgment is unclear in that movers are collectively referred to as "Bergeron,” but part of the motion applies to Raymond Bergeron only, i.e„ his personal liability as to construction and design.

. The motion to strike by defendants is incorporated in defendants’ Reply to Plaintiff’s Opposition to Motion for Partial Summary Judgment.

. La. Admin. Code, tit, 46, pt. I, § 1313 and 1319, interpret La. R.S. 37:152(B) and 37:141(b)(3), respectively.

. § 1313. Interpretation of R.S. 37:152(B)
A. 1. Specifications, drawings, or other related documents will be deemed to have been prepared either by the architect or under the architect’s responsible supervision only when:
a. the client requesting preparation of such plans, specifications, drawings, reports or other documents makes the request directly to the architect, or the architect's employee as long as the employee works in the architect’s office;
*888 b. the architect personally controls the preparation of the plans, specifications, drawings, reports or other documents and has input into their preparation prior to their completion;
c. if the plans, specifications, drawings, reports, or other such documents are prepared outside the architect’s office, the architect shall maintain evidence of the architect’s responsible control including correspondence, time records, check prints, telephone logs, site visit logs, research done for the project, calculations, changes, and written agreements with any persons preparing the documents outside of the architect’s offices accepting professional responsibility for such work;
d. the architect reviews the final plans, specifications, drawings, reports or other documents; and
e. the architect has the authority to, and does, make necessary and appropriate changes to the final plans, specifications, drawings, reports or other documents.
2, If an architect fails to maintain written documentation of the items set forth above, when such are applicable, then the architect shall be considered to be in violation of R.S. 37:152, and the architect shall be subject to the disciplinary penalties provided in R.S. 37:153. This written documentation should be maintained for the prescriptive period applicable to claims against the architect which may arise from his or her involvement in the project.
B. 1. Nothing precludes the use of prototypical documents provided the architect;
a.has written permission to revise and adapt the prototypical documents from the person who either sealed the prototypical documents or is the legal owner of the prototypical documents;
b. reviewed the prototypical documents and made necessary revisions to bring the design documents into compliance with applicable codes, regulations, and job specific requirements;
c. independently performed and maintains on file necessary calculations;
d. after reviewing, analyzing, and making revisions and/or additions, issued the documents with his/her title block and seal (by applying his/her seal, the architect assumes professional responsibility as the architect of record); and
e. maintained design control over the use of site adapted documents just as if they were his/her original design.
2. The term prototypical documents shall mean model documents of buildings that are intended to be built in several locations with substantially few changes and/or additions except those required to adapt the documents to each particular site; that are generic in nature, that are not designed or premised upon the laws, rules or regulations of any particular state, parish, or municipal building code; that do not account for localized weather, topography, soil, subsistence, local building codes, or other such conditions or requirements; and that are not intended to be used as the actual documents to be employed in the construction of a building, but rather as a sample or a model to provide instruction or guidance. The term legal owner shall mean the person who provides the architect with a letter that he or she is the owner of the documents and has the written permission to allow the use thereof.

. Citing James S. Holliday, Jr., & H. Bruce Shreves, Louisiana Practice Series: Louisiana Construction Law, 1:19 pp. 10-11 (2013).

. The City required some minor changes be made before issuing the permit. Bergeron reviewed the changes, and forwarded the letter to Turner.