MOLAISON, J.
In this declaratory judgment action involving an insurance coverage dispute under an Armored Car Cargo Liability Policy, defendants, Certain Underwriters at Lloyd's London Subscribing to Policy FINFR1503374 ("Underwriters"), appeal the trial court's December 14, 2017 judgment granting a motion for partial summary judgment filed by plaintiff, ASI Federal Credit Union ("ASI"), and denying a motion for summary judgment filed by Underwriters.[1] For the reasons that follow, finding the admissible evidence insufficient to resolve all genuine issues of material fact regarding whether Underwriters' policy provides or precludes coverage to ASI, we reverse the trial court's judgment in part, affirm in part, and remand the matter for further proceedings.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On July 18, 2016, ASI filed suit against Underwriters seeking to have the court declare that the Armored Car Cargo Liability Policy issued by Underwriters to its insured, LeoTran Armored Security, LLC ("LeoTran"), affords coverage for a loss sustained by ASI as a result of LeoTran's tortious acts. According to ASI's petition, ASI is a not-for-profit local credit union headquartered in Jefferson Parish, and uses automated teller machines ("ATMs"), both at its branch offices and at several of its freestanding locations. In 2012, ASI outsourced the servicing of its ATMs to a third party contractor, Bank Equipment Solutions/ATM Worldwide, LLC ("ATMWW"), purportedly pursuant to a Brand ATM Agreement. In turn, ATMWW contracted with armored car carriers to service ASI's ATMs by transporting cash to and from ASI's ATMs. ATMWW entered into such a service *556 agreement with LeoTran in August of 2013 to service ASI's ATMs, which LeoTran did until December 2015. Though no contractual privity existed between ASI and LeoTran, relying on La. C.C. arts. 1978 and 1982, ASI alleged that, pursuant to ASI's contract with ATMWW and ATMWW's contract with LeoTran, ASI was LeoTran's customer, and a third party beneficiary to the contract between ATMWW and LeoTran.[2]
LeoTran, a Louisiana limited liability company that provides, among other things, armored car security services, is owned by its founder and principal, Leonard Tolleson. According to ASI, Mr. Tolleson-on behalf of the company, and in accordance with the licensing requirements for armored car carriers set forth in La. R.S. 37:3276(E), in addition to the obligations LeoTran assumed under its service agreement with ATMWW-purchased an Armored Car Cargo Liability Policy from Underwriters with an effective policy period of April 15, 2015 to April 15, 2016 (the "Policy"). ASI avers that Mr. Tolleson purchased the Policy to cover LeoTran's liability associated with servicing ATMs and other enumerated risks associated with its business operations.
In its petition, ASI alleges that in December 2015, employees of LeoTran picked up $100,000 of ASI cash from the Federal Reserve for which there has never been an accounting. Additionally, ASI avers that LeoTran employees removed approximately $593,380 in cash from several ASI ATMs it serviced, and absconded with an additional $688,820 in case reserves that LeoTran was holding in trust for future cash delivery to the ASI ATMs it serviced. In total, ASI contends that $1,382,200 of its money disappeared while in the care, custody, and control of LeoTran. ASI reported the missing funds to the Jefferson Parish Sheriff's Office after which an investigation ensued. To date, ASI claims that $34,200 has been recovered and returned to ASI, but $1,348,000 remains missing.
On December 22, 2015, ATMWW submitted a claim to Underwriters on behalf of ASI under the Policy seeking recovery of any and all monies that were missing while in LeoTran's care. In response to ASI's claim under the Policy, Underwriters stated that "there is no relief that [Underwriters] can provide [to ASI] at this stage." When Underwriters refused to make payment to ASI under the Policy, ASI filed the instant action seeking a declaratory judgment that Underwriters has an obligation to provide insurance coverage to ASI under the Policy for the loss of $1,348,000 of ASI's money that purportedly went missing while in LeoTran's care that has not been recovered or returned to ASI.
On August 23, 2016, Underwriters filed an answer to ASI's petition denying coverage and asserting various coverage defenses. Before discovery had commenced, ASI moved for partial summary judgment seeking a declaration that Underwriters' policy provided coverage for its claims against LeoTran. In response, Underwriters filed a cross-motion for summary judgment, seeking dismissal of ASI's claim. The parties' competing motions came for hearing on October 19, 2017, after which the matter was taken under advisement. Thereafter, on December 14, 2017, the trial court issued judgment granting ASI's motion for partial summary judgment finding the Policy provided coverage for ASI's claim against Leotran; Underwriters'
*557 cross-motion was denied. Incorporated in the December 14, 2017 judgment, without accompanying written reasons, the trial court stated:
[T]he Court finds that property of ASI Federal Credit Union was lost or damaged while in the care, custody, and control of LeoTran, and that ASI Federal Credit Union was a customer of LeoTran. Further, the Court finds that the Directors and Officers Exclusion Clause is inapplicable to this matter.
Underwriters now appeals the trial court's granting of ASI's motion for partial summary judgment and denying its motion for summary judgment.[3] In particular, Underwriters argues that the trial court erred by improperly admitting the affidavits submitted by ASI to support its partial motion for summary judgment when those affidavits were not based on the affiants' personal knowledge; that the trial court erred in finding that ASI met its threshold burden of establishing that LeoTran is liable to it; and, that the trial court erred in denying Underwriter's motion for summary judgment and finding the Policy provides coverage for ASI's alleged loss. For the following reasons, finding the admissible summary judgment evidence insufficient to resolve all genuine issues of material fact regarding whether the Policy either provides or precludes coverage to ASI for its alleged loss, we reverse the trial court's granting of ASI's motion for partial summary judgment, affirm the trial court's denial of Underwriters' motion for summary judgment, and remand the matter for further proceedings.
STANDARD OF REVIEW
Appellate courts review the granting of summary judgment de novo using the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Hogg v. Chevron USA, Inc. , 09-2632 (La. 7/6/10), 45 So.3d 991, 996.
LAW AND DISCUSSION
Applicable Law
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine issue of material fact. Bell v. Parry , 10-369 (La. App. 5 Cir. 11/23/10), 61 So.3d 1, 2. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The motion "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection has been made. " [Emphasis supplied.] La. C.C.P. art. 966(D)(2).
The affidavits submitted by the mover must be scrutinized closely. Myers v. Omni Hotel, Inc. , 94-2004 (La. App. 4 Cir. 4/13/95), 654 So.2d 771, 774. Moreover, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that *558 the affiant is competent to testify to the matters stated therein and the basis of affiant's knowledge. La. C.C.P. art. 967(A). It is not sufficient for an affiant to merely declare that he has personal knowledge of a fact. South Central Bell Tel. Co. v. Rouse Co. of Louisiana , 590 So.2d 801, 803 (La. App. 4th Cir. 1991).
The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966(D)(1). However, if the movant will not bear the burden of proof at trial, the movant's burden on a motion for summary judgment does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. ; Patrick v. Iberia Bank , 05-783 (La. App. 5 Cir. 3/14/06), 926 So.2d 632, 634. If the adverse party fails to produce factual support sufficient to establish a genuine issue of material fact, summary judgment should be granted. La. C.C.P. art. 966(D)(1).
The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Robinson v. Rockhill Ins. Co. , 13-860 (La. App. 5 Cir. 4/23/14), 139 So.3d 1031, 1032-1033. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage should be afforded. Id. , 139 So.3d at 1033. An insurer seeking to avoid coverage through summary judgment bears the burden of proving that some provision or exclusion applies to preclude coverage. Id.
La. C.C.P. arts. 966 and 967 do not permit a party to utilize unsworn and unverified documents as summary judgment evidence. Thus, a document that is not an affidavit or sworn to in any way, or is not certified or attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether there are remaining genuine issues or material fact. Marino v. Parish of St. Charles , 09-197 (La. App. 5 Cir. 10/27/09), 27 So.3d 926, 930 ; Input/Output, Inc. v. Wilson Greatbatch, Inc. , 07-570 (La. App. 5 Cir. 1/22/08), 977 So.2d 109, 115-116, writ denied , 08-0397 (La. 4/18/08), 978 So.2d 350. Therefore, in meeting the burden of proof, unsworn or unverified documents, such as letters, emails, or reports, annexed to motions for summary judgment are not self-proving and will not be considered; attaching such documents to a motion for summary judgment or to a pleading does not transform such documents into competent summary judgment evidence. See Marino , 27 So.3d at 930-931. Put simply, if the supporting affidavits and documents presented by the moving party are insufficient to resolve all material issues of fact, summary judgment is not appropriate. South Central Bell Tel. Co. , 590 So.2d at 803-804.
ASI's Motion for Partial Summary Judgment
A. Underwriters' Armored Car Cargo Liability Policy
In support of its contention that Underwriters' policy insuring LeoTran affords coverage to ASI for its alleged loss, ASI, who is not a named insured, relies on the following provisions, in pertinent part:
1. This policy covers the liability of the insured, assumed by the contract or otherwise, for loss or damage to property, as defined in clause 2, within the Continental United States, excluding Alaska, arising from any cause whatsoever, in *559 transit or otherwise, including any act or omission of the insured or any of its employees, or anyone acting in its service ....
2. Wherever used in this policy "property" shall be deemed to mean: ...Money (currency and coin)....
3. Loss if any, payable to the insured and/or its customers as their respective interest may appear ....[4]
4. Cover[age] hereunder is to attach from the time property is delivered into the insured's care and their responsibility commences and is to continue until delivered to the consignee or his duly authorized agent, as the case may be, or in the event of non-delivery, until returned to the consignor or customer.
* * *
13. In consideration of the premium charged, it is specifically understood and agreed that when the insured make contracts providing that they will call at an [ATM] owned by the customer for the purpose of providing service, this policy shall cover the liability of the assured for loss resulting from the unauthorised [sic] entry into the ATM or any safe, strong box or money chest used in conjunction with said ATM. Coverage under this policy shall include losses resulting from unauthorized use of a master key, dial rim key, combination, electronic or computerized entry systems for the unlawful abstraction of money and checks.
Thus, under the pertinent Policy provisions, in order to determine whether ASI is entitled to summary judgment that the Policy provides coverage, we must first determine that the supporting affidavits and documents presented by ASI are sufficient to resolve all material issues of fact regarding whether ASI-who is not a named insured under the Policy-qualifies as a "customer" of LeoTran or a third party beneficiary of the ATMWW/LeoTran contract, and whether ASI's alleged "loss or damage to property" occurred while in LeoTran's care prior to its delivery or return to ASI. If the affidavits and documents are not sufficient, summary judgment is not appropriate. South Central Bell Telephone Company , 590 So.2d at 803. Even though summary judgments are now favored, any doubt as to a dispute regarding a genuine issue of material fact must be resolved against summary judgment and in favor of trial on the merits. Semco, LLC v. Grant Ltd. , 16-342 (La. App. 5 Cir. 5/31/17), 221 So.3d 1004, 1032, writ denied , 17-1291 (La. 11/6/17), 229 So.3d 475.
B. ASI's Summary Judgment Evidence
In connection with its motion and supporting memorandum, ASI submitted eleven exhibits, which included a copy of the Policy, and the affidavits of Brian Menard, the vice president of operations of ASI, and Fabian Blache, III, the executive secretary and chief administrative officer of the Louisiana State Board of Private Security Examiners ("LSBPSE").[5] Over the objection of Underwriters, the trial court admitted the affidavits of Mr. Menard and Mr. Blache. The remaining eight exhibits, which consisted of various records, reports, letters, emails, and video evidence, were attached to Mr. Menard's affidavit. These eight exhibits, objected to by Underwriters, were excluded. Consequently, the trial court did not consider these documents in ruling on ASI's motion, and they will, likewise, not be considered *560 by this Court upon our de novo review.[6]
Underwriters argue that the trial court erred in admitting the affidavits of Mr. Menard and Mr. Blache in support of ASI's motion because the affidavits were not made on the affiants' personal knowledge. The requirement of La. C.C.P. art. 967 that "affidavits shall be made on personal knowledge" has been strictly enforced; it is insufficient for an affiant to merely declare that he has "personal knowledge" of a certain fact. The affidavit must affirmatively establish that the affiant is competent to testify to the matters stated by a factual averment showing how he came by such knowledge. Midland Funding, LLC v. Trahan, 12-562 (La. App. 5 Cir. 2/21/13), 110 So.3d 1154, 1157 ; THH Props., Ltd. P'ship v. Hill , 41,038 (La. App. 2 Cir. 6/2/06), 930 So.2d 1214, 1219. "Personal knowledge" means something the witness actually saw or heard, as distinguished from what he leaned from some other source. Hibernia Nat'l Bank v. Rivera , 07-962 (La. App. 5 Cir. 9/30/08), 996 So.2d 534, 539. The purpose of the "personal knowledge" requirement is to limit the affidavit to facts which the affiant saw, heard, or perceived with his own senses. Id. Portions of affidavits not based on personal knowledge of the affiant should not be considered by the trial court in deciding a motion for summary judgment. Id.
Where in the affidavit the affiant is merely identifying business records sought to be introduced into evidence, and the affiant is qualified to identify those records, this Court has held that the personal knowledge requirements of La. C.C.P. art. 967 are satisfied. Whitney Nat. Bank v. Reliable Mailing , 96-968 (La. App. 5 Cir. 4/9/97), 694 So.2d 479, 481. In such a case, the affiant is not required to show that he personally prepared the business records, or that he had direct, independent, first-hand knowledge of the contents thereof; the affiant's attested familiarity with the records by virtue of his position is sufficient. Id. ; Rivera , 996 So.2d at 540.
In the case sub judice , with respect to Mr. Menard's affidavit, Underwriters contend that rather than being based on personal knowledge as required by La. C.C.P. art. 967, the information contained in Mr. Menard's affidavit was based on his inspection of unidentified "documentation, received or generated by ASI in the regular course of business" and, as such, should have been excluded. To the contrary, relying on this Court's decision in Rivera , supra , ASI argues that the affidavit of Mr. Menard satisfied the personal knowledge requirement. Specifically ASI avers that Mr. Menard, as vice president of operations and the corporate representative of ASI, was attesting as to the business records attached thereto and, consequently, was "not required to show that he personally prepared the business records, or that he had direct, independent, first-hand knowledge of the contents thereof."
Our review of Mr. Menard's affidavit, however, shows that it was not submitted by ASI solely for purposes of certifying that the records attached thereto were documents kept in the regular course of ASI's business so as to establish their admissibility under the code of evidence. The affidavit contained factual statements-whose *561 proof is necessary in order to establish coverage for ASI's alleged loss under the Policy-which Mr. Menard attempted to substantiate with the "business records" he attached, in lieu of his personal knowledge as to those facts. Moreover, assuming the records attached to Mr. Menard's affidavit are the same records "received or generated by ASI in the regular course of business" that he inspected and relied upon in preparing his affidavit, each one of those "business records" were excluded by the trial court as inadmissible summary judgment evidence. Consequently, each factual statement to which Mr. Menard attested based solely on his inspection of "business records" that were excluded, must be disregarded. Absent those portions of Mr. Menard's affidavit, the remaining factual statements (that were not specifically based on an attached document that was excluded), include:
5. ASI leases automated teller machines ("ATMs"), which are branded with ASI's logo, throughout southeast Louisiana ("ASI branded ATMs").
6. LeoTran is an armored car company that transported and stored cash for ASI - servicing ASI branded ATMs - from September 2013 until December 2015.
7. ASI considers itself LeoTran's customer.
8. Underwriters issued an Armored Car Cargo Liability Policy to LeoTran Armored Security. A copy of the Armored Car Policy received by ASI is attached as Exhibit 1 to ASI's motion for summary judgment.[7]
18. After January 2016, ASI was not contacted again by Tom Brownfield, McLarens, Marshall & Sterling Insurance, or any other representative of Underwriters to investigate the loss.
19. ASI did not receive any requests for information from Underwriters or its representative before litigation commenced.
20. ASI has not received a reservation of rights letter from Underwriters.
21. ASI has not received an acceptance or denial of its claim from Underwriters.
As to these remaining factual statements attested to by Mr. Menard, we find they fail to resolve all genuine issues of material fact regarding whether ASI was a "customer" of LeoTran under the Policy or a third party beneficiary of the service agreement between ATMWW and LeoTran, or whether the alleged loss of ASI's property occurred while it was in LeoTran's care. First, the self-serving statement that "ASI consider[ed] itself Leotran's customer" does not mean that ASI was, in fact, LeoTran's customer. Whether ASI was a customer of Leotran is an issue of material fact, and it is to be weighed by the trier of fact to determine whether coverage of ASI's loss is triggered under the Policy.
Similarly, we find that the factual statements contained in Mr. Menard's affidavit that are admissible do not establish or resolve the issue of whether ASI was a third party beneficiary to the ATMWW/LeoTran service agreement. Though copies of the Brand Service Agreement between ASI and ATMWW, and the service agreement between ATMWW and LeoTran,[8] are on file in the *562 record-which agreements may have assisted in establishing the relationships between the various parties-neither agreement was certified and/or attached to an affidavit and, as such, had no evidentiary value as to ASI's motion for partial summary judgment. See La. C.C.P. art. 966(A)(4), art. 966(D)(2), or art. 967(A). Documents that are not certified and not attached to an affidavit are not of sufficient evidentiary quality to be given weight in determining whether there exists a genuine issue of material fact. Harris v. Dunn , 45,619 (La. App. 2 Cir. 9/22/10), 48 So.3d 367, 371.
We further find that the admissible factual statements in Mr. Menard's affidavit do not establish or resolve all genuine issues of material fact as to whether ASI sustained a "loss or damage to property" that occurred while the property was in LeoTran's care, custody, and control, which finding is necessary in order to trigger coverage for ASI's loss under the Policy. Underwriters dispute this fact, and the factual statements contained in Mr. Menard's affidavit that are admissible do not address this issue.
We also find that the affidavit of Mr. Blache does not resolve these factual issues that remain in dispute. Even if we were to assume that the facts contained in Mr. Blache's affidavit are based on his own personal knowledge-an issue we need not consider-none of the facts set forth in his affidavit address, much less prove, that "property of ASI ... was lost or damaged while in the care, custody, and control of LeoTran ... and that ASI ... was a customer of LeoTran," facts which ASI must prove in order for ASI to prevail on its motion for partial summary judgment. ASI has failed to do this through admissible summary judgment evidence.
Without the appropriate supporting documentation, ASI is not entitled to summary judgment under La. C.C.P. art. 966(A)(3). See Input/Output, Inc. v. Wilson Greatbatch, Inc. , supra . Whether ASI was a customer of LeoTran or a third party beneficiary to the service agreement between ATMWW and LeoTran, and whether ASI's purported loss occurred while in LeoTran's care triggering coverage under the Policy are still in dispute. Thus, we find that partial summary judgment in favor of ASI was improper and the trial court erred in granting it.
Underwriters' Motion for Summary Judgment
Underwriters filed a motion for summary judgment on the basis that, even if ASI could establish LeoTran's liability for the loss or damage to its property, the Policy does not provide coverage for ASI's alleged loss. Specifically, Underwriters argues that the Policy's "Directors & Officers Exclusion Clause" clearly and unambiguously excludes coverage for ASI's claim, i.e. , the alleged theft of ASI's cash by the owner of LeoTran. The particular policy exclusion provides:
This policy does not cover loss directly resulting from any act(s), or error(s) or omissions(s) of Directors or Officers of the Assured except when such Director or Officer is performing acts coming within the scope of the usual duties of an employee of the Assured.
Though interpretation of an insurance policy is usually a legal question that can properly be resolved by summary judgment, summary judgment declaring a *563 lack of coverage under the policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded. Smith v. Reliance Insurance Company , 01-888 (La. App. 5 Cir. 1/15/02), 807 So.2d 1010, 1014 ; Mangerchine v. Reaves , 10-1052 (La. App. 1 Cir. 3/25/11), 63 So.3d 1049, 1053. Keeping in mind the principle that insurance policies should be interpreted to effect, not deny, coverage ( Yount v. Maisano , 627 So.2d 148, 151 (La. 1993) ), because we cannot say on the record before us that there is no reasonable interpretation of the Policy under which coverage would be triggered and afforded to ASI, we find the trial court's denial of Underwriters' motion for summary judgment was proper.
Moreover, an insurer seeking to avoid coverage through summary judgment must show that some exclusion applies that unambiguously excludes coverage. Smith , supra . Though Underwriters contend that the clear language of the Policy's "Directors & Officers" exclusion "unambiguously" precludes coverage to ASI for its loss, we disagree. Under the facts as alleged by ASI-that ASI's cash went missing while in the care of LeoTran and has not yet been recovered or returned to ASI-absent evidence of collusion between ASI and LeoTran, it is not "unambiguously" clear that the Policy's directors and officers exclusion bars recovery thereunder to ASI-an innocent third party-though it may preclude coverage to LeoTran under the same set of facts. For these reasons, Underwriters is not entitled to summary judgment.
CONCLUSION
Accordingly, finding that genuine issues of material fact remain as to whether the armored car cargo liability policy issued by Underwriters to LeoTran provides or precludes coverage for ASI's alleged loss, we reverse that portion of the trial court's judgment granting ASI's motion for summary judgment, affirm that portion of the judgment that denies Underwriters' motion for summary judgment, and remand the matter for further proceedings.
REVERSED IN PART, AFFIRMED IN PART, REMANDED.

The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. However, where, as here, there are cross-motions for summary judgment raising the same issues, this Court will review the denial of a summary judgment in addressing the appeal of the granting of the cross-motion for summary judgment. Waterworks Dist. No. 1 of DeSoto Parish v. La. Dep't. of Pub. Safety & Corr. , 16-0744 (La. App. 1 Cir. 2/17/17), 214 So.3d 1, 3 n. 1, writ denied , 17-0470 (La. 5/12/17), 219 So.3d 1103 ; Marseilles Homeowners Condo Ass'n v. Broadmoor, LLC. , 12-1233 (La. App. 4 Cir. 2/27/13), 111 So.3d 1099, 1103 n. 2. See also Ferguson v. Bocskov , 07-924 (La. App. 5 Cir. 3/25/08), 983 So.2d 162, 164, wherein this Court reviewed the denial of the defendant's cross-motion for summary judgment in the context of the appeal from the grant of the plaintiff's cross-motion on the same issue.

Neither a copy of the Brand ATM Agreement between ASI and ATMWW, nor a copy of the service agreement between ATMWW and LeoTran were submitted by ASI in support of its motion for partial summary judgment.

Underwriters' original devolutive appeal of the December 14, 2017 judgment, on the basis that the judgment was final and appealable pursuant to La. C.C.P. art. 1915(A)(5), was docketed as 18-CA-164. Out of an abundance of caution, Underwriters moved the trial court to certify the judgment as final and appealable under La. C.C.P. art. 1915(B), and then filed a second devolutive appeal, which was docketed as 18-CA-306. The briefing deadlines were set in the 18-CA-164 appeal. Thereafter, as a matter of procedure, the 18-CA-306 appeal was consolidated with the 18-CA-164 appeal. Accordingly, there is only one substantive appeal for review before this Court.

The Policy does not expressly define "customer."

Except for the Policy, Underwriters objected to all of ASI's exhibits, including the affidavits of Mr. Menard and Mr. Blache.

In its appellee brief, ASI avers this Court should consider the evidence the trial court erred in excluding below. However, because ASI did not answer Underwriters' appeal or separately appeal the trial court's ruling excluding this evidence, ASI is now precluded from challenging the ruling here. "[A]n appellee who desires to have the judgment modified, revised, or reversed in part must file an answer to the appeal." Badalamenti v. Jefferson Guar. Bank , 99-1371 (La. App. 5 Cir. 4/25/00), 759 So.2d 274, 277.

Underwriters did not object to the admissibility of the Policy.

Underwriters, in its answer to ASI's petition, admitted that "there was at all relevant times a written contract in place between ATMWW and Leo[T]ran, which contract is the best evidence of its terms and conditions." We find this statement insufficient to qualify as an admission or stipulation by Underwriters (which would obviate the certification requirement) as to the specific ATMWW/LeoTran contract to which ASI claims it was a third party beneficiary.