JUDGE SANDRA CABRINA JENKINS
This is an action for wrongful eviction brought by a mortgagor against his mortgage lender and loan servicer. Kelvin Lebeau appeals the trial court's October 12, 2017 judgment granting the Motion for Summary Judgment filed by defendants Deutsche Bank and Trust Company Americas ("Deutsche Bank") and Saxon Mortgage Services, Inc. ("Saxon") (collectively, "Appellees"). Based on our review of the record, we conclude that Mr. Lebeau was not wrongfully evicted from property located at 11631 West Barrington Drive in New Orleans, Louisiana ("Property"). Instead, *972 we find that Mr. Lebeau abandoned the Property secured by the mortgage. And under the terms of the mortgage, Appellees had the contractual right to physically secure and preserve the Property, while still giving Mr. Lebeau full access to Property. Accordingly, we affirm the trial court's judgment.
FACTUAL AND PROCEDURAL BACKGROUND
On September 26, 2006, Mr. Lebeau entered into an adjustable rate note ("Note") in the amount of $ 117,000.00 plus interest, payable to Novastar Mortgage, Inc. ("Novastar"). The Note was secured by a mortgage ("Mortgage") executed on that date by Mr. Lebeau, which encumbered his Property. Deutsche Bank, as trustee for Novastar, was the holder and owner of the Note and Mortgage. Deutsche Bank retained Saxon to service Mr. Lebeau's Mortgage, which included the right to collect and apply payments received to Mr. Lebeau's mortgage loan, and take steps to secure the Property in the event of default.
On January 4, 2010, after Mr. Lebeau defaulted under the terms of the Mortgage and Note, Deutsche Bank filed a "Petition for Suit on a Note and Enforcement of Mortgage on Real Estate" in Civil District Court for the Parish of Orleans. Saxon retained CoreLogic Field Services ("CoreLogic") to inspect and secure Mr. Lebeau's Property after he defaulted on the loan. CoreLogic contracted with Southern Customs of Louisiana ("Southern Customs") to perform the property inspection and preservation services for Saxon.
In his Petition for Damages, Mr. Lebeau alleged that on January 20, 2010, defendants or their agents broke into his Property and illegally resorted to "self-help" repossession by changing the locks, breaking into the doors, breaking locked gates, and posting signs on the Property. In his Amended Petition, Mr. Lebeau alleged that Deutsche Bank and its agents wrongfully evicted him and illegally took possession of his Property by breaking and entering.
On November 2, 2012, Saxon filed a Motion for Summary Judgment, arguing that the Mr. Lebeau's Mortgage gave Deutsche Bank the right to take whatever steps were reasonable and appropriate to protect Deutsche Bank's interest in the Property, which included securing or repairing the Property. On January 8, 2013, the trial court denied Saxon's Motion for Summary Judgment. This judgment is not at issue in this appeal.
On May 16, 2017, after Mr. Lebeau's deposition was taken, Deutsche Bank filed a Motion for Summary Judgment, seeking dismissal of Mr. Lebeau's claims on the grounds that he had abandoned the Property, which was vacant when Southern Customs secured and winterized the Property on January 20, 2010. On June 22, 2017, Saxon joined in Deutsche Bank's Motion for Summary Judgment. After a hearing on August 31, 2017, the trial court signed a judgment dated October 12, 2017, granting the Appellees' Motion for Summary Judgment, and dismissing Mr. Lebeau's claims against them, with prejudice.
Mr. Lebeau timely appealed.
DISCUSSION
Standard of Review
We apply a de novo standard of review in examining a trial court's ruling on summary judgment. Hare v. Paleo Data, Inc. , 11-1034, p. 9 (La. App. 4 Cir. 4/4/12), 89 So.3d 380, 387. Accordingly, we use the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. Id. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine *973 issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." Fiveash v. Pat O'brien's Bar, Inc. , 15-1230, p. 7 (La. App. 4 Cir. 9/14/16), 201 So.3d 912, 917 (quoting Quinn v. RISO Invest., Inc. , 03-0903, pp. 3-4 (La. App. 4 Cir. 3/3/04), 869 So.2d 922, 926 ).
Burden of Proof
La. C.C.P. art. 966(D)(1) governs the mover's burden on a motion for summary judgment:
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
The issues presented for review are whether Mr. Lebeau had abandoned the Property on or before January 20, 2010, when Southern Customs arrived to secure and repair the Property; whether Deutsche and its agents wrongfully evicted Mr. Lebeau from the Property on January 20, 2010; and whether Appellees' affidavits supporting their Motion for Summary Judgment satisfy La. C.C.P. art. 967(A)'s requirement of personal knowledge.
The Mortgage
The first two issues require an analysis of the Mortgage between Mr. Lebeau and Deutsche Bank, which is the law between the parties. Dace v. Novastar Mortg., Inc. , 10-1384, p. 2 (La. App. 4 Cir. 4/13/11) (unpub. ), 66 So.3d 88, 2011 WL 9165407. Section 9 of the Mortgage provides that if Mr. Lebeau abandons the Property, then Deutsche Bank has the right to secure the Property, which includes entering the Property to make repairs, changing the locks, replacing or boarding up doors and windows, draining water from pipes, eliminating dangerous conditions, and having the utilities turned off:
9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument ... or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and /or assessing the value of the Property, and securing and/or repairing the Property.... Securing the Property includes, but is not limited to, entering the property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.
Appellees' Summary Judgment Evidence
Appellees presented the following evidence in support of their Motion For Summary Judgment:
*974 On January 20, 2010, Jerry Jacques, acting on behalf of Southern Customs, inspected the Property and found the house was devoid of furniture, all major appliances were missing, and only a few personal objects remained. According to Southern Customs work orders, Mr. Jacques changed the lock only on the back door of the Property. Mr. Jacques also took photographs of the Property on January 20, 2010, which showed that it was vacant.
Appellees submitted Orleans Parish Sheriff's service records showing that Sheriff's Deputy Robert Jordan found the Property to be "vacant" when he attempted to serve Mr. Lebeau with a foreclosure petition on January 13, 2010. Appellees also offered records provided by Entergy in response to a subpoena showing that in October 2009, electrical service to the Property was "cut out for nonpayment." The records reflect that gas service to the property was shut off in November 2010, and that the electrical meter was removed entirely in April 2011.
Mr. Lebeau's Summary Judgment Evidence
In Opposition to the Motion for Summary Judgment, Mr. Lebeau submitted two of his affidavits, the affidavit of his brother, Keith Lebeau; the affidavit of his neighbor and friend, Tyrone Roby; and the affidavit of his family friend, Patrick Williams. Mr. Lebeau attested that he was working in Baton Rouge on January 20, 2010, when he received a phone call from a neighbor that his home had been broken into. He stated in his affidavit that he drove to New Orleans and confronted two Southern Customs representatives inside his home. In his deposition, Mr. Lebeau was shown the photographs taken by Mr. Jacques and admitted that they accurately depicted the vacant condition of the house on January 20, 2010, even though he stated in his affidavit that the house was full of furniture and appliances. Mr. Lebeau stated in his affidavit that he and his friends removed all of his furniture and appliances on January 21, 2010. After being shown Mr. Jacques's photographs, Mr. Lebeau testified in his deposition that he may have removed the dishwasher and refrigerator from his house on January 18 or 19, 2010 (before the entry by Southern Customs).
Contrary to the physical evidence, Mr. Williams attested that Southern Customs turned off the utilities and the water at the residence when it entered the Property. Keith Lebeau, Mr. Lebeau's brother, attested that he visited Mr. Lebeau several days prior to the entry, and Mr. Lebeau still lived there with full utilities. Keith Lebeau and Mr. Roby also attested that there was bedroom furniture, living room furniture, dining room furniture, kitchen appliances, and a pool table at the residence on January 20, 2010. Contrary to Mr. Lebeau's deposition, all four affiants stated that they moved all of Mr. Lebeau's furniture and appliances out of the house the day after January 20, 2010. All four affiants also declared that Mr. Lebeau was living in the Property on and before January 20, 2010, and that he did not abandon the residence.
Wrongful Eviction
Mr. Lebeau contends that breaking, entering, changing some or all of the locks, and verbally ordering him off the Property constitute wrongful eviction by Appellees.
In Regency Motors of Metairie, L.L.C. v. Hibernia-Rosenthal Ins. Agency, L.L.C., 03-1212, pp. 6-7 (La. App. 5 Cir. 2/23/04), 868 So.2d 905, 909, the court defined an "actual eviction" as "[a] physical expulsion of a person from land or rental property" and held that a wrongful eviction requires "actual impingement on any possessory rights." (quoting BLACK'S LAW DICTIONARY (7th ed. 1999). Louisiana jurisprudence interpreting this term consistently requires that the occupant be actually denied physical *975 entry to the premises. See Pelleteri v.Caspian Group, Inc. , 02-2141, 02-2142, p. 3 (La. App. 4 Cir. 7/2/03), 851 So.2d 1230, 1233 (landlord padlocked the property, preventing the tenant's employees from entering premises); Carson v. Cent. Progressive Bank , 432 So.2d 891, 893 (La. App. 1st Cir. 1983) (bank locked gate to property so that plaintiff had no other useful passageway onto his place of business); Boisdore v. Int'l City Bank & Trust Co. , 361 So.2d 925, 928 (La. App. 4th Cir. 1978) (bank changed the locks and refused to let plaintiff to enter the property to retrieve his movables).
Here, Mr. Lebeau was not denied physical access to the Property. Mr. Jacques of Southern Customs testified that he only changed the back lock of the house, which allowed Mr. Lebeau to enter the house through the front door. A work order from Southern Customs confirms that only the back door lock was changed. Mr. Lebeau admitted that the front door lock had not been changed and that he could freely enter the house, which he did. He offered no evidence to show that he was ever prevented from accessing, entering, or residing at the Property. In fact, Mr. Lebeau never made any effort to move back into the Property, and he testified that he did not want the Property.
Mr. Lebeau also contends that he was wrongfully evicted because Deutsche Bank instituted a wrongful foreclosure proceeding. Mr. Lebeau's Property, however, has never been foreclosed upon, wrongfully or otherwise. The January 4, 2010 foreclosure proceeding remains pending today. Mr. Lebeau admitted that Appellees have never obtained a foreclosure judgment and never taken title to the Property. Because this is not a foreclosure suit, the trial court properly did not address Mr. Lebeau's contentions regarding self-help in violation of Louisiana law. As the trial court did find, Deutsche Bank and Saxon had the contractual right under the Mortgage to protect and secure the Property if it was abandoned and, as discussed below, Mr. Lebeau had in fact abandoned the Property.
Abandonment
With respect to the issue of abandonment, the trial court stated:
[T]he evidence provided by [Appellees] undisputedly shows that the property was abandoned when Southern Customs entered the property in order to determine that it was abandoned and in order to secure the property..... [Mr. Lebeau's] conflicting affidavits are insufficient to create a genuine issue of material fact sufficient to defeat summary judgment.
We agree. The summary judgment record shows that:
• The electricity to the house had been turned off in October 2009 because of non-payment;
• The photographs taken by Mr. Jacques show that the furniture and major appliances had been removed as of January 20, 2010;
• The Orleans Parish Sheriff's records show that the house was vacant when the Sheriff's Deputy tried to serve Mr. Lebeau with a foreclosure petition on January 13, 2010;
• The gas service to the house was turned off in November 10, 2010;
• The electrical meter was removed in April 2011 because the property was vacant.
A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. Chatelain v. Fluor Daniel Const. Co. , 14-1312, p. 3 (La. App. 4 Cir. 11/10/15), 179 So.3d 791, 793 ;
*976 Mandina, Inc. v. O'Brien , 13-0085, p. 9 (La. App. 4 Cir. 7/31/13), 156 So.3d 99, 104-05. " 'To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.' " Perniciaro v. McInnis , 18-0113, p. 9 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1231, writ denied , 18-1659 (La. 12/17/18), 259 So.3d 342 (quoting Chanthasalo v. Deshotel , 17-0521, p. 5 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107 ).
With respect to Mr. Lebeau's summary judgment evidence, the affidavits from neighbors and family members stated that Mr. Lebeau lived in the house and did not abandon the Property. These are ultimate facts and conclusions of law, and cannot be considered in deciding summary judgment. See Farmer v. Reyes , 95-0734, 95-0735, p. 3 (La. App. 4 Cir. 11/16/95), 665 So.2d 129, 131. Mr. Lebeau's affidavit, and those of his family and friends, also contradicts his prior deposition testimony. "A subsequent affidavit in contradiction to prior deposition testimony is not sufficient to create an issue of fact precluding summary judgment without some explanation or support for the contrary statement." McCastle-Getwood v. Prof'l Cleaning Control , 14-0993, p. 7 (La. App. 1 Cir. 1/29/15), 170 So.3d 218, 222. Mr. Lebeau does not offer any explanation for his inconsistent testimony.
Furthermore, " '[s]ummary judgment [is] warranted when a plaintiff has only conclusory, speculative testimony and the physical evidence is uncontroverted.' " Bridgewater v. New Orleans Regional Transit Auth. , 15-0922, p. 14 (La. App. 4 Cir. 3/9/16), 190 So.3d 408, 417 (quoting Jones v. Estate of Santiago , 03-1424 (La. 4/14/04), 870 So.2d 1002 ). Based on the overwhelming physical evidence produced by Appellees -- and the conclusory, conflicting testimony offered by Mr. Lebeau -- reasonable minds must inevitably conclude that Mr. Lebeau will not be able to satisfy his evidentiary burden of proof at trial and, therefore, Appellees are entitled to summary judgment as a matter of law.
Admissibility of Appellees' Affidavits
Finally, Mr. Lebeau contends that the affidavits of William R. Ferguson, who was employed by Saxon; and Todd Crane, who was the previous owner of Southern Customs, were inadmissible because they were not based on personal knowledge. Saxon introduced Mr. Ferguson's affidavit in support of its November 2, 2012 motion for summary judgment, which the trial court denied and which is not at issue on this appeal. Mr. Ferguson's affidavit, thus, need not be addressed by this court.
Mr. Crane's affidavit was introduced in support of the appellees' summary judgment at issue to authenticate business records-the work order forms prepared by a Southern Customs' employee and the photographs submitted with the work order. In his affidavit, Mr. Crane properly authenticated those records, which were attached to it.[1] Given Mr. Crane's personal knowledge regarding Southern Customs' business records, his affidavit was properly considered.[2]
*977 Further, Mr. Lebeau, however, did not object to these affidavits in his opposition memo or in a reply memo. Under La. C.C.P. art. 966(D)(2) :
The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. (Emphasis added.)
In the absence of a timely objection from Mr. Lebeau, the trial court did not err in considering the affidavits of Mr. Ferguson and Mr. Crane when deciding whether to grant summary judgment.
This assignment is without merit.
CONCLUSION
For all these reasons, we affirm the trial court's October 12, 2017 judgment granting Appellees' Motion for Summary Judgment, and dismissing Mr. Lebeau's claims against Appellees, with prejudice.
AFFIRMED

Mr. Crane's affidavit references the attachments as follows: the initial Secure Work Order Completion forms, dated 1/20/10; and photographs of the property dated 1/20/10.

See Capital One Bank (USA), NA v. Sanches , 13-0003, p. 7 (La. App. 4 Cir. 6/12/13), 119 So.3d 870, 874 (observing that "for purposes of summary judgment, that where affiants attest to facts contained in business records said affiants are not required to demonstrate that they personally prepared the records or have firsthand knowledge of the contents of the records"); Asi Fed. Credit Union v. Certain Underwriters at Lloyd's of London Syndicate 1414 Subscribing to Policy FINFR1503374 , 18-164, pp. 9-10 (La. App. 5 Cir. 11/7/18), 259 So.3d 552, 560 (observing that when "the affiant is merely identifying business records sought to be introduced into evidence" and "the affiant is qualified to identify those records, ... the personal knowledge requirements of La. C.C.P. art. 967 are satisfied).