| | | |
|---|---|---|
| **PEGGY HAYNES** | * | **NO. 2023-CA-0678** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **SEWERAGE AND WATER** | * | |
| **BOARD OF NEW ORLEANS** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-06324, DIVISION "F-14"
Honorable Jennifer M. Medley, Judge
**\* \* \* \* \* \***
**Judge Dale N. Atkins**
**\* \* \* \* \* \***
(Court composed of Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins, Judge
Rachael D. Johnson)

**JENKINS, J. DISSENTS IN PART AND CONCURS IN PART.**

George B. Recile
Jeremy N. Gettes
CHEHARDY, SHERMAN, WILLIAMS, RECILE & HAYES, L.L.P.
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

     COUNSEL FOR PLAINTIFF/APPELLANT, Peggy Haynes

Ashley Ian Smith, Assistant Special Counsel
Darryl Harrison, Deputy Special Counsel
Yolanda Y. Grinstead, Special Counsel
625 St. Joseph Street, Room 201
New Orleans, LA 70165

     COUNSEL FOR DEFENDANT/APPELLEE, Sewerage and Water Board of
New Orleans

Darryl M. Phillips
Anthony M. Williams
Chynna M. Anderson
639 Loyola Avenue, 26th Floor
New Orleans, LA 70113

     COUNSEL FOR DEFENDANT/APPELLEE, Entergy New Orleans, LLC

Loretta G. Mince
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170

COUNSEL FOR DEFENDANT/APPELLEE, Wallace C. Drennan, Inc.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**
**JULY 31, 2024**

DNA

RDJ

This is a trip and fall case. Appellant, Peggy Haynes ("Mrs. Haynes"), appeals the trial court's judgments rendered on July 14, 2023; July 17, 2023; and July 20, 2023. These judgments, respectively, granted the motions for summary judgment filed by Appellees, Wallace C. Drennan, Inc. ("Drennan"); Entergy New Orleans, LLC ("Entergy"); and the Sewerage and Water Board of New Orleans ("SWBNO"). The July 2023 judgments also dismissed Mrs. Haynes' claims against Drennan, Entergy, and SWBNO (collectively "Appellees") with prejudice. For the following reasons, we affirm the trial court's July 14, 2023 judgment in favor of Drennan; reverse the trial court's July 17 and 20, 2023 judgments in favor of Entergy and SWBNO; and remand this matter for further proceedings consistent with this Opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Petitions

On June 27, 2018, Mrs. Haynes filed a Petition for Damages ("Petition") in Civil District Court for the Parish of Orleans, wherein she named SWBNO as a defendant. In her Petition, Mrs. Haynes explained that on approximately August 4, 2017, she was walking in an area where her property on Morrison Road met the

1

public sidewalk (owned by the City of New Orleans) when she fell into a hole and sustained injuries. Mrs. Haynes asserted that the hole "created an unreasonably dangerous condition causing her to fall" and that the hole was the result of a broken sewer line that "was in the custody, control, and/or garde of [SWBNO]." Mrs. Haynes also contended that, prior to her fall, her husband had contacted SWBNO "on multiple occasions" to notify SWBNO about the broken sewer line but that SWBNO had failed to repair it. To this end, Mrs. Haynes argued that SWBNO knew or should have known about the broken sewer line and that it created an unreasonably dangerous condition. Ms. Haynes contended that SWBNO was negligent by failing to give warnings of the dangerous condition; failing to properly inspect and maintain the area to discover the dangerous condition; and failing to warn of inherent dangers associated with things under its garde, custody, and control.

Then, on April 17, 2020, Mrs. Haynes filed a "Motion for Leave to File Second Amended and/or Supplemental Petition for Damages," which the trial court granted on April 27, 2020,[1] and she added Entergy and Drennan as defendants. Thereafter, on September 28, 2020, Mrs. Haynes filed a "Motion for Leave to File[,] Replace and Amend Second Amended and/or Supplemental Petition for Damages," and the trial court granted her motion. In her Second Supplemental and Amending Petition ("Second Amending Petition"), Mrs. Haynes expounded that at the time of her August 2017 fall, she "was walking to retrieve personal documents

---

[1] Mrs. Haynes titled the pleading in this manner because she had already filed a "Motion for Leave to File Plaintiff's First Supplemental and Amending Petition" on September 24, 2018, which the trial court granted on October 1, 2018. In her First Supplemental and Amending Petition, Mrs. Haynes simply added the municipal address of her property.

from her church van," which was "situated in front of her home." Regarding Entergy's alleged liability for her fall, Mrs. Haynes contended that "the hole was created by a broken and/or punctured sewer line resulting from an improperly placed utility pole which caused the soil to leave the area and form a depression." She further contended that "Entergy was negligent in its installation of the power line and should have reasonably anticipated that the utility pole placed over the sewer line and/or water main would cause the utility pole to push down into, puncture, and/or damage the sewer line." As to Drennan's alleged liability, Mrs. Haynes asserted in her Second Amending Petition that SWBNO had contracted with Drennan "to complete repairs to the sewer line servicing [Mrs. Haynes'] property prior to the subject accident" and "that Drennan caused further damage to the water line connected to [Mrs. Haynes'] property as a result of its negligent repair efforts resulting in the defective condition referenced [previously (the hole)]." In pertinent part, Mrs. Haynes contended that both Entergy and Drennan "fail[ed] to warn of inherent dangers associated with things under [their] garde, custody, and control."

## Drennan's Motion for Summary Judgment

On May 11, 2023, Drennan filed its Motion for Summary Judgment. In its Motion, Drennan explained that although it had performed work near Mrs. Haynes' property prior to her August 2017 fall, all of this work was on the opposite side of Mrs. Haynes' former property[2] from the location of the hole into which she allegedly fell. Specifically, Drennan averred that the work it performed in 2014 and in early 2017 was on the sewer-house connection located in the driveway on

_____

[2] We note that, according to Drennan's Motion for Summary Judgment, Mrs. Haynes moved to a different home sometime after her August 2017 fall.

3

the west side of the property. Drennan also stated that this work was "on only a 'short piece' of the sewer." By contrast, as Drennan stated, Mrs. Haynes fell in a hole located on the east side of the property. Accordingly, Drennan argued that Mrs. Haynes would not be able to satisfy her burden of proof at trial that Drennan's work caused or contributed to the hole and that it owed a duty to her. In support of its Motion for Summary Judgment, Drennan attached excerpts from the transcript of the August 18, 2022 deposition of Wallace Drennan, III ("Mr. Drennan"). Mr. Drennan testified that Drennan first worked at the subject property in 2014 and also performed work there in early 2017 as part of a contract with SWBNO. Mr. Drennan stated that the work performed in January 2017 was near the driveway at Mrs. Haynes' former home, specifically where the sewer connected to the house. Mr. Drennan testified that this was not the area where Mrs. Haynes subsequently fell in August 2017. Further, Mr. Drennan explained that this work was completed on March 3, 2017, when a subcontractor repaved the sidewalk and driveway area where the sewer connects with the house.

In her opposition to Drennan's Motion for Summary Judgment, Mrs. Haynes contended that Drennan owed a duty of care because SWBNO documents evidenced that Drennan was under contract to perform work in the specific area where she fell during the time period in which she fell. In particular, Mrs. Haynes contended that SWBNO assigned work to Drennan on March 31, 2017, for Drennan "to complete 189 feet of CIPP lining work from Manhole 425-068 to 475-067, which encompasse[d] the area right . . . where [she] fell." According to Mrs. Haynes, the completion date was supposed to be May 8, 2017, i.e., before her fall, but the work was not completed until January 31, 2018. In support of this contention, Mrs. Haynes attached to her opposition excerpts of the 1442 deposition

of SWBNO which was the March 4, 2020 deposition of Fred O. Tharp, P.E. ("Mr. Tharp"). Additionally, Mrs. Haynes included with her opposition some of the exhibits attached to Mr. Tharp's deposition. One of those exhibits was titled "[SWBNO] Work Activity Full" for Morrison Road and dated March 31, 2017 ("March 2017 Work Order"). The March 2017 Work Order stated the problem as "CIPP line from [manhole] 425-068 to [manhole] 425-067," and the details section listed "Contract 30204-Drennan." Additionally, the March 2017 Work Order listed the actual start date as April 6, 2017, and the date by which the work was to be completed as May 8, 2017. However, the "Completed Date" section of the March 2017 Work Order is blank. The excerpts of Mr. Tharp's deposition that Mrs. Haynes included with her opposition to Drennan's Motion for Summary Judgment do not encompass the part of Mr. Tharp's deposition when the March 2017 Work Order was marked for identification as an exhibit to Mr. Tharp's deposition.

On June 23, 2023, Drennan filed a "Reply in Support of [its] Motion for Summary Judgment" ("Reply"). In pertinent part, Drennan contended therein that the March 2017 Work Order was not authenticated and thus constituted improper summary judgment evidence.

**SWBNO's Motion for Summary Judgment**

On May 30, 2023, SWBNO filed its Motion for Summary Judgment. Therein, SWBNO argued that the trial court should grant summary judgment in its favor because "the alleged hole where [Mrs. Haynes] claims to have sustained injuries was both open and obvious to any and all who passed and, therefore, was not unreasonably dangerous such that liability could be imposed" on SWBNO. Additionally, SWBNO stated in its Motion for Summary Judgment that Mrs. Haynes knew about the alleged hole.

In support of its Motion for Summary Judgment, SWBNO attached the transcript of the May 24, 2022 deposition of Mrs. Haynes. Therein, Mrs. Haynes explained that prior to falling in the hole on August 4, 2017, she was inside her former home with her family members when they heard a loud noise at approximately 2:00-2:30 a.m. and went outside to see what happened. According to Mrs. Haynes, a woman in a vehicle accidentally hit their van thereby pushing it from where it was parked to in front of their neighbors' house. Mrs. Haynes explained that she and her family called the police and that the police officer who responded to the call asked Mrs. Haynes to retrieve the van's relevant paperwork from the glove compartment of the vehicle. Thereafter, as Mrs. Haynes testified, she proceeded to get the paperwork from the van but fell in the hole on the way to the van. Mrs. Haynes explained that she walked on a different path to reach the truck than the one she would normally traverse because she was trying to avoid walking through glass in the street. She described the hole as "large" and "[b]ig enough for [her] to go in." Mrs. Haynes testified that although she was aware in August 2017 that SWBNO was performing work and digging up that area, she did not realize the hole was there at the time of her fall because grass had grown across it. The following colloquy occurred:

> Q     But the hole itself, had the hole already formed before August 4, 2017?
>
> A     Ah, it was just a part. It was just a part of the damages.
>
> Q     What do you mean by that?
>
> A     That hole, that particular hole, grass had grown across that hole, [that is] how come [sic] I [did not] know that hole was there. But they had already started working and digging up all of that property. And that -- It was just a lot of work to be done. They had dug up all the sidewalk.

6

Q    So you were aware, [i]n August 2017, that they were performing work and digging up that area?

A    Of course. Yes, I was aware.

Q    You said grass had grown over there. Was there some point where there was not grass on the hole, but it was -- Was there a point in time where there was not grass on the hole, and you could see the hole, before August 2017?

A    Yes. Yes.

Q    And that hole had been there long enough that grass was able to grow across it?

A    Of course. [That is] why we were calling them to come out and fix can it, come out and fix it. They never would come out, you know, to fix it. And then that hole was there, then grass grew across the hole.

Additionally, Mrs. Haynes stated that prior to the fall, her husband, Larry Haynes ("Mr. Haynes"), had been calling SWBNO "to have them come out and fix the repairs that they started" and "telling them [to] come and fix the property." Mrs. Haynes also testified that while caution barrels were present starting in at least September 2016 when her husband reported a depression in the sidewalk in front of the home near the hole, the barrels were not always there because sometimes children walking down the sidewalk would move them; and Mrs. Haynes could not recall whether she saw barrels around the area of the hole on the night of her fall.

During her deposition, Mrs. Haynes explained that after she fell into the hole, her family brought her to the emergency room that night because she was experiencing pain in her left side, including her leg and knee. Mrs. Haynes testified that she began physical therapy in September 2017. Mrs. Haynes further stated that she ultimately had to undergo surgery, which was "performed in connection with [her] fall in the hole" to fix "a cyst and a disc on [her] spine." According to Mrs.

7

Haynes, she was healthy and active before the fall and had been preparing for a marathon, but the fall "was the end of that."

SWBNO also attached the transcript of the May 24, 2022 deposition of Mr. Haynes to its Motion for Summary Judgment. During his deposition, Mr. Haynes testified that he did not recall specifically when the hole first appeared; but, when asked about a September 6, 2016 service request that he submitted to SWBNO, Mr. Haynes stated that he believed that marked the first time he reported a depression in the sidewalk, which eventually collapsed and was right next to the hole where Mrs. Haynes subsequently fell in August 2017. Mr. Haynes testified that by the time he submitted the September 2016 service request, he had likely already complained about the condition of the area once before because "it was . . . years" before SWBNO "started any kind of repairs" in the area. Mr. Haynes testified about other times that he complained to SWBNO about issues at the property: he reported a problem with sewage backup on September 9, 2016; he reported a possible broken sewer line on November 14, 2016; he reported a depression on the sidewalk near the sewer line on January 9, 2017; and he reported a depression on the sidewalk near the sewage cleanout on April 20, 2017. Additionally, Mr. Haynes explained that while, at times, there were warning barrels in the area with the sidewalk depression and hole, these had to be replaced or reset several times because wind would blow them away or somebody would discard them.

In addition, SWBNO attached a Google Street View image of the Haynes' former property in support of its Motion for Summary Judgment. The image depicts the hole into which Mrs. Haynes allegedly fell but shows the hole barricaded by caution barrels and tape. The image was captured in April 2017 prior

8

to Mrs. Haynes' fall. SWBNO contended that the image provided support for finding that "any defect in the sidewalk or adjacent grass[] where [Mrs. Haynes] traversed was both open and obvious."

In her opposition to SWBNO's Motion for Summary Judgment, Mrs. Haynes countered that the hole was not open and obvious on the night of her fall. In support, Mrs. Haynes attached the transcript of her deposition testimony, as well as a photograph which was marked during her deposition as "Exhibit 23." The exhibit is a photograph purportedly depicting Mrs. Haynes in the hole immediately after she fell in August 2017. Mrs. Haynes testified that her daughter took the photograph.

### Entergy's Motion for Summary Judgment

Entergy also filed its Motion for Summary Judgment on May 30, 2023. Therein, Entergy contended that summary judgment in its favor was proper because Mrs. Haynes would be unable to meet her burden of proof to establish that its utility pole broke a sewer line or that a broken sewer line was the cause of the hole into which she allegedly fell. Entergy argued that "at no point prior to [Mrs. Haynes'] fall did [SWBNO] determine there was a break in the main sewer line in the vicinity of the subject hole—much less that Entergy's utility pole caused any break in the line or that a broken main sewer line was related to or caused the subject hole." Further, Entergy argued that there was "no competent evidence" or expert testimony "to support [Mrs. Haynes'] allegations that Entergy improperly placed its utility pole" or that "any alleged break in the main sewer line created the hole or depression into which [she] reportedly fell."

Mrs. Haynes filed an opposition to Entergy's Motion for Summary Judgment, wherein she countered that after her fall SWBNO "determined that

9

Entergy's pole had been placed on top of the sewer line which caused the hole that [she] fell into" and "that Entergy's pole had damaged the sewer main where [her] incident occurred." In support of this contention, she attached the transcript of the March 4, 2020 deposition of Mr. Tharp. During his deposition, Mr. Tharp testified that in October 2019, SWBNO determined that "Entergy ended up at some point placing a pole right on top of the sewer line. Over time, the sewer line fail[ed] because the [pole] settles down through the pipe." When Mr. Tharp was asked to expand on this point, the following colloquy occurred:

> Q.    So the sewer mains were there prior to Entergy placing utility poles in that area?
>
> A.    Correct.
>
> Q.    So what you determined was that the reason for the depression was because the power or the utility pole impeded on the sewer line?
>
> A.    So the reason for the depression is soil left the area, was transported into the void of the sewer system itself.
>
> Q.    Which was caused as a result of the utility pole?
>
> A.    [There is] a strong correlation between the utility pole pushing down through the sewer line as the cause.

In support of her opposition, Mrs. Haynes also attached an excerpt from the deposition of another SWBNO employee, Lance Joseph ("Mr. Joseph"). During Mr. Joseph's deposition, he also testified about SWBNO's October 2019 discovery regarding the Entergy pole:

> Q.    All right. In looking sort of in the middle of this page where it notes problem details, it says, "After excavating on both sides of Entergy pole to push through a broken section of sewer main, found no pipe. Deteriorating sewer main. Offset sewer main in street from MH Number 425-068 to 425-067. Contract 30219-Drennan."
>          Did I read that correct, sir?
>
> A.    Yeah.

Q. Upon hearing or reading that problem detail section that I just read out loud to you, what does that sentence inform you of or what does it tell you, if anything?

A. [It is] letting me know that after the contractor dug up the job, they found that the pole caused the sewer to break.

. . . .

Q. When it says, "Found no pipe, deteriorating sewer main," does it mean there was actually no sewer pipe in that particular section that was dug up?

A. I think, if [I am] understanding what [they are] saying right here, [they are] saying that the pole crushed the pipe and caused it probably to deteriorate. At the time it seems like they [did not] have . . . pipe, but it had pipe at one time. The pole caused the pipe to crack up. And I guess by sitting under the ground and the sewer still flowing, trying to flow, it probably caused the pipe to kind of like go inside the pipe and deteriorate and, you know, you might lose parts of the pipe . . . .

Mr. Joseph testified that he physically observed this condition. Mrs. Haynes contended that both Mr. Tharp's and Mr. Joseph's testimony were permissible under La. C.E. art. 701 to support her assertion that Entergy's pole damaged the sewer line and caused the hole into which she fell.

Additionally, in support of her opposition to Entergy's Motion for Summary Judgment, Mrs. Haynes attached the transcript of her deposition, which we previously summarized in reference to SWBNO's Motion for Summary Judgment.

## **Judgments**

The trial court set all three motions for summary judgment for hearing on June 30, 2023. During the hearing, Drennan again argued that the March 2017 Work Order was inadmissible, but the trial court did not specifically rule on this. Thereafter, on July 14, 2023, the trial court granted Drennan's Motion for

11

Summary Judgment; granted Entergy's Motion for Summary Judgment on July 17, 2023; and granted SWBNO's Motion for Summary Judgment on July 20, 2023.

Mrs. Haynes subsequently requested written reasons for judgment, which the trial court issued on July 26, 2023. In its written reasons for judgment, the trial court determined that "SWBNO had custody . . . of the area causing the depression" but that "the depression did not cause an unreasonable risk of harm" because "evidence was not introduced to refute the finding that the depression was open and obvious." To this end, the trial court noted that Mrs. Haynes was aware of the hole, knew of its presence, and that the hole was large enough for her to fit inside. The trial court further stated that "[i]t is undisputed that . . . there were caution barrels/ cones marking any defect in the sidewalk." Accordingly, the trial court concluded that SWBNO was not liable to Mrs. Haynes.

Regarding Drennan, the trial court found "that all work performed by Drennan was completed prior to [Mrs. Haynes'] fall in 2017" and that "all work performed by Drennan prior to [Mrs. Haynes'] fall . . . was actually performed on the opposite side of [Mrs. Haynes'] property." Thus, the trial court concluded that Drennan also was not liable to Mrs. Haynes.

Finally, concerning Entergy, the trial court stated:

There is no evidence to support a finding that [Entergy] had any custody or control of a utility pole that caused or contributed to the depression located next to [Mrs. Haynes'] property. There are no material issues of genuine fact between [Mrs. Haynes'] injuries, the cause of the depression, and the ownership or custody of the depression adjacent to [Mrs. Haynes'] property, as the depression was open and obvious to [Mrs. Haynes] at the time of the alleged accident.

Mrs. Haynes' timely appeal of the July 2023 judgments followed.

## ASSIGNMENTS OF ERROR

On appeal, Mrs. Haynes asserts three assignments of error:

1.    The Trial Court committed legal error in granting SWBNO's Motion for Summary Judgment;

2.    The Trial Court committed legal error in granting [Drennan's] Motion for Summary Judgment; and

3.    The Trial Court committed legal error in granting [Entergy's] Motion for Summary Judgment.

Because all three of Ms. Haynes' assignments of error pertain to the motions for summary judgment filed by Appellees, we will begin our discussion with the principles and standard of review applicable to the summary judgment procedure.

## DISCUSSION

### Summary Judgment Principles and Standard of Review

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* A trial court grants a motion for summary judgment if "[a]fter an opportunity for adequate discovery," the mover's "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). In particular, "[t]he party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *LZM Props., LLC v. Priv. Connection Prop., Inc.*, 2023-0707, 0708, p. 14 (La. App. 4 Cir. 4/25/24), ___ So.3d ___, ___, 2024 WL 1793245, at *7 (quoting *Lepree v. Dorsey*, 2022-0853, p. 11 (La. App. 4 Cir. 8/11/23), 370 So.3d 1191, 1199). As this Court has explained, "'[a] genuine issue is' defined as 'a triable issue.'" *Id.* at pp. 14-15, ___ So.3d at ___, 2024 WL 1793245, at *7. More

13

specifically, "an issue is genuine if reasonable persons could disagree" about the issue. *Id.* at p. 15, ___ So.3d at ___, 2024 WL 1793245, at *7. However, "there is no need for a trial on [an] issue" when "reasonable persons could reach only one conclusion" on that issue based "on the state of the evidence." *Id.* "A material fact is defined as one whose 'existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery.'" *Id.* When a particular fact "potentially insure[s] or preclude[s] recovery, affect[s] a litigant's ultimate success, or determine[s] the outcome of the legal dispute," then it constitutes a material fact. *Id.* (alterations in original) (citing *Dorsey*, pp. 12-13, 370 So.3d at 1199) (alterations in original). For a court to determine "[w]hether a particular fact in dispute is material" the court must look to "the substantive law applicable to the case because the applicable substantive law determines materiality." *Id.* (alteration in original) (citing *Dorsey*, p. 13, 370 So.3d at 1199-1200).

If and when the party moving for summary judgment "'satisfies the initial burden,' of proving that there is no genuine issue of material fact, then 'the burden shifts to the party opposing summary judgment to present factual support sufficient to show he [or she] will be able to satisfy the evidentiary burden at trial.'" *Id.* (alteration in original) (quoting *Lirette v. Adams*, 2022-0552, 0553, p. 19 (La. App. 4 Cir. 1/31/23), 382 So.3d 122, 135). When "the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," however, "the mover's burden on the motion does not require him [or her] to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La.

14

C.C.P. art. 966(D)(1). If "'the motion has been made and properly supported,' then 'the burden shift[s] from the mover to the adverse party.'" *LZM Props., LLC*, 2023-0707, 0708, p. 15, ___ So.3d at ___, 2024 WL 1793245, at *7 (alteration in original) (quoting *Lepree*, 2022-0853, p. 12, 370 So.3d at 1199).

Upon the burden shifting, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). To produce such support, "[the] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided . . . , must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). When the trial court "consider[s] a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *LZM Props., LLC*, 2023-0707, 0708, p. 16, ___ So.3d at ___, 2024 WL 1793245, at *7 (quoting *Lepree*, 2022-0853, p. 13, 370 So.3d at 1200). After the burden has shifted, "[i]f the party opposing the motion fails to establish the existence of a genuine issue for trial though, 'summary judgment, if appropriate, shall be rendered against him [or her].'" La. C.C.P. art. 967(B). This is because "[w]hen the party opposing the motion for summary judgment fails to provide factual evidence sufficient to establish that he [or she] will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment is appropriate." *LZM Props., LLC*, 2023-0707, 0708, p. 16, ___ So.3d at ___, 2024 WL 1793245, at *7 (internal quotation marks omitted) (alteration in original) (quoting *Lepree*, 2022-0853, p. 12, 370 So.3d at 1199).

15

When an appellate court reviews a trial court's ruling on a motion for summary judgment, the appellate court reviews the matter *de novo* and uses "the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Id.* at p. 16, ___ So.3d at ___, 2024 WL 1793245, at *8 (quoting *Lepree*, 2022-0853, p. 11, 370 So.3d at 1198-99). To determine whether summary judgment is appropriate, the "appellate courts ask the same questions the trial court does," specifically "whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* at pp. 16-17, ___So.3d at ___, 2024 WL 1793245, at *8 (quoting *Lepree*, 2022-0853, p. 11, 370 So.3d at 1199).

### Applicable Negligence Principles

As stated above, the applicable substantive law determines materiality on a motion for summary judgment. Mrs. Haynes' Petitions raise negligence causes of action against Appellees. In a negligence cause of action, "[t]he threshold issue . . . is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Bufkin v. Felipe's La., LLC*, 2014-0288, p. 5 (La. 10/15/14), 171 So.3d 851, 855 (citing *Milbert v. Answering Bureau, Inc.*, 2013-0022 (La. 6/28/13), 120 So.3d 678, 687-88). Louisiana Civil Code Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Further, La. C.C. art. 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody."

If a plaintiff claims damage as a result of a "ruin, vice, or defect" in a thing within someone else's custody, this invokes La. C.C. art. 2317.1. It states:

16

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. C.C. art. 2317.1. Louisiana Civil Code Article 2317.1 imposes a duty on a "custodian of property to keep [that] property in a reasonably safe condition." *Ramirez v. Lighthouse Prop. Ins. Corp.*, 2021-0184, pp. 3-4 (La. App. 4 Cir. 12/15/21), 333 So.3d 1286, 1289-90 (citing *Cheramie v. Port Fourchon Marina, Inc.*, 2016-0895, p. 4 (La. App. 1 Cir. 2/17/17), 211 So.3d 1212, 1215). In interpreting La. C.C. art. 2317.1, this Court has explained that to succeed under a custodial theory of recovery, a plaintiff must prove four elements by a preponderance of the evidence. Specifically the plaintiff must demonstrate that 1. the thing was in the custodian's custody or control; 2. the thing had a vice or defect, which created an unreasonable risk of harm; 3. the defendant knew or should have known that the vice or defect presented an unreasonable risk of harm; and 4. the defect caused the plaintiff's damages. *Fisher v. Villere*, 2020-0242, p. 9 (La. App. 4 Cir. 2/24/21), 313 So.3d 1282, 1289 (quoting *Szewczyk v. Party Planners W. Inc.*, 2018-0898, p. 7 (La. App. 4 Cir. 5/29/19), 274 So.3d 57, 62). A plaintiff's failure to prove even one of these factors will defeat his or her negligence claim. *Ramirez*, 2021-0184, p. 4, 333 So.3d at 1291.

Because Mrs. Haynes would bear the burden of proof at a trial on this matter, Appellees, as the movers on their respective motions for summary judgment, had to point out the absence of factual support for one or more elements essential to Mrs. Haynes' claims. In response, Mrs. Haynes had to produce factual

support sufficient to establish the existence of a genuine issue of material fact or that Appellees were not entitled to judgment as a matter of law. Consequently, under our *de novo* review, we will examine each of the elements needed to prove a claim under La. C.C. art. 2317.1 for Drennan, SWBNO, and Entergy.

### *Custody/Control*

As stated previously, the first element we must consider is whether each Appellee had custody or control of the area where Mrs. Haynes fell. In determining if "a defendant had *garde* or custody over a thing, a court must consider whether the defendant had the right of direction or control over the thing and what, if any, benefit the defendant derived from the thing." *Chesney v. Entergy La., L.L.C.*, 51,718, pp. 7-8 (La. App. 2 Cir. 11/15/17), 245 So.3d 281, 286 (citing *Doughty v. Insured Lloyds Ins. Co.*, 576 So.2d 461, 464 (La. 1991)). The summary judgment evidence establishes that SWBNO had a sewer pipe in the area of the hole and had begun performing work on the area containing the hole prior to Mrs. Haynes' accident. Additionally, the evidence establishes that SWBNO's caution barrels were around the hole at various times prior to Mrs. Haynes' fall. Like the trial court, we agree that SWBNO had custody or control over the area containing the hole.

The summary judgment evidence also establishes that Entergy maintained a utility pole in the area in which Mrs. Haynes fell. Mr. Tharp and Mr. Joseph both testified that SWBNO determined that Entergy's pole caused damage to the sewer line, which resulted in the sidewalk depression and hole. Entergy contends that these are lay witnesses who cannot establish the link between Entergy's pole and the subject hole. We disagree. Louisiana Code of Evidence Article 701 states:

18

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

That is, "a lay witness may give opinion testimony based on his training, investigation, perception of the scene, and observation of physical evidence." *Lee v. La. Bd. of Trs. For State Colls.*, 2017-1433, p. 9 (La. App. 1 Cir. 3/13/19), 280 So.3d 176, 185 (citing *Rideau v. State Farm Mut. Auto. Ins. Co.*, 2006-0894, p. 6 (La. App. 1 Cir. 8/29/07), 970 So.2d 564, 572). Mr. Tharp's and Mr. Joseph's testimony fall within this description and thus constitute lay opinion testimony. Ultimately, at the trial of this manner, the trier of fact will determine how much weight to give their testimony; but, at this point, their testimony creates a genuine issue of material fact as to whether Entergy's utility pole contributed to or caused the hole, thereby rendering Entergy a custodian of the area too. In light of the foregoing, we find that Mrs. Haynes has produced factual support sufficient to establish the existence of a genuine issue of material fact regarding whether SWBNO and Entergy had custody or control of the area.

Turning to Drennan, the March 2017 Work Order indicates that Drennan *may* have been working in the subject area at the time Mrs. Haynes fell; however, Drennan asserted in its reply to Mrs. Haynes' opposition and in its brief to this Court that this document constitutes improper summary judgment evidence. We agree. Louisiana Code of Civil Procedure Article 966(A)(4)(a) states:

> The only documents that may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies

19

of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions.

In interpreting this provision, the Louisiana Fifth Circuit Court of Appeal has explained that "the introduction of documents which are not included in this exclusive list . . . is not permitted unless they are properly authenticated by an affidavit or the deposition to which they are attached." *Jessie v. Wendy's Co.*, 2022-156, p. 7 (La. App. 5 Cir. 12/7/22), 356 So.3d 467, 472 (first citing *Reed v. Landry*, 2021-589, p. 9 (La. App. 5 Cir. 6/3/22), 343 So.3d 874, 881; and then citing *Dye v. LLOG Exploration Co.*, 2020-441, p. 3 (La. App. 5 Cir. 11/3/21), 330 So.3d 1222, 1224-25). *See also* La. C.C.P. art. 966, Comments – 2015, Comment (c). The Louisiana Code of Evidence explains that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). If a document is attached as an exhibit to a deposition and presented to the deponent as part of an in globo exhibit but the deponent did not identify the document, testify as to his or her familiarity with the document, or confirm that the document is what it is purported to be, then the document has not been authenticated by the deponent per La. C.E. art. 901(a); fails to satisfy the requirements of La. C.C.P. art. 966(A)(4); and should be excluded as summary judgment evidence. *Loupe v. Roman Catholic Church of Diocese of Baton Rouge*, 2022-1153, p. 7 (La. App. 1 Cir. 4/14/23), 365 So.3d 844, 850. That is, merely attaching a document to a deposition does not render that document competent summary judgment evidence. *Hohensee v. Turner*, 2014-0796, p. 5 (La. App. 4 Cir. 4/22/15), 216 So.3d 883, 886 (citing *Marino v. Par. of St. Charles*, 2009-0197, p. 7 (La. App. 5 Cir. 10/27/09), 27 So.3d 926, 930-931). *See also Jones*

20

*v. Boot Bar & Grill*, 2022-0154, pp. 20-22 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 982-83 (finding that certain exhibits were inadmissible with the plaintiff's opposition to a motion for summary judgment because the plaintiff did not properly identify and authenticate them, instead simply referencing them in an affidavit by stating "See Exhibit P-1;" "See Exhibit P-2"; and "See Exhibit P-3").

The March 2017 Work Order is not included within the exclusive list of documents that may be admitted into evidence and considered in support of or in opposition to a motion for summary judgment. *See* La. C.C.P. art. 966(A)(4). Additionally, our review of the excerpts of Mr. Tharp's deposition filed in relation to Drennan's Motion for Summary Judgment do not include any identification or authentication of the March 2017 Work Order so as to constitute "evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). Mr. Tharp did not identify the March 2017 Work Order, testify as to his familiarity with the document, or confirm the document is what Mrs. Haynes purports it to be. Without the proper identification and authentication, we conclude that the March 2017 Work Order was inadmissible summary judgment evidence.[3] In her opposition to Drennan's Motion for Summary

---

[3] Mrs. Haynes included the entirety of Mr. Tharp's deposition—rather than excerpts—in support of her opposition to Entergy's Motion for Summary Judgment. During Mr. Tharp's deposition, before counsel for Mrs. Haynes identified 171 documents he had received from SWBNO as "Exhibit 2," the following occurred:

> BY [COUNSEL FOR MRS. HAYNES]:
>     Q.    Mr. Tharp, these are documents that were provided to me today. They are Bates-stamped SWBNO 1 through 171.
>
>     Are these all the documents that your search of the records held by the Sewerage & Water Board have concerning the document production inquiry set forth in the notice of deposition?

Judgment, Mrs. Haynes provided no other basis or evidence for establishing the existence of a genuine issue of material fact regarding whether Drennan had custody or control of the area at the time of her fall. Instead, as Mr. Drennan testified, the summary judgment record establishes that Drennan completed its work in the area no later than March 2017. Because Mrs. Haynes failed to provide factual evidence sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial as she cannot establish all of the elements of a custodial negligence claim against Drennan, there is no genuine issue of material fact, and the summary judgment granted in favor of Drennan was appropriate. We thus affirm the trial court's July 14, 2023 judgment, which granted Drennan's Motion for Summary Judgment.

Having determined that summary judgment in favor of Drennan was proper, the remainder of our analysis will focus only on SWBNO and Entergy.

---

A.    Yes.

(Marked for identification as Exhibit 2 – Document production, SWBNO 1 through 171.)

The March 2017 Work Order was in this batch of documents marked as Exhibit 2, and Mr. Tharp did not specifically identify it or testify about it at any other time during his deposition. We note, however, that even if Mr. Tharp had properly identified and authenticated the March 2017 Work Order during his deposition in accordance with La. C.E. art. 901, Mrs. Haynes would have needed to include that part of Mr. Tharp's deposition testimony with her opposition to Drennan's Motion for Summary Judgment. This is because we "may consider only those documents specifically filed in support of or in opposition to a motion for summary judgment, *even if those documents appear elsewhere in the record.*" *Duran v. Roul's Deli Juicy Juicy, L.L.C.*, 2021-1600, p. 4 (La. App. 1 Cir. 8/8/22), 348 So.3d 735, 737 (first citing La. C.C.P. art. 966(D)(2), Comments - 2015, comment (k); and then citing *Simon v. CenturyLink, Inc.*, 2021-0412, pp. 6-7 (La. App. 1 Cir. 12/22/21), 340 So.3d 88, 91-92). Thus, even if Mr. Tharp had identified and authenticated the March 2017 Work Order during his deposition, Mrs. Haynes' failure to include with her opposition enough of Mr. Tharp's deposition demonstrating same would have been fatal.

***Unreasonable Risk of Harm***

The second custodial negligence element is whether "the thing had a vice or defect, which created an unreasonable risk of harm." Regarding this element, this Court has explained that "[t]he mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition." *Cavet v. ABC Ins. Co.*, 2020-0454, p. 14 (La. App. 4 Cir. 4/21/21), 316 So.3d 91, 101 (quoting *Primrose v. Wal-Mart Stores, Inc.*, 48,370, p. 5 (La. App. 2 Cir. 10/2/13), 127 So.3d 13, 17). Rather, an unreasonably dangerous condition is present only if the "condition or imperfection . . . poses an unreasonable risk of injury to persons exercising ordinary care and prudence." *Id.* at p. 14, 316 So.3d at 102 (quoting *Todd v. Angel*, 48,687, p. 9 (La. App. 2 Cir. 1/15/14), 132 So.3d 453, 458). The Louisiana Supreme Court "has adopted a risk-utility balancing test, wherein the fact-finder must balance the gravity and risk of harm against individual societal rights and obligations, the social utility of the thing, and the cost and feasibility of repair." *Id.* at p. 15 (La. App. 4 Cir. 4/21/21), 316 So.3d 91, 102 (quoting *Broussard v. State, through Office of State Bldgs., Div. of Admin.*, 2012-1238, pp. 9-10 (La. 4/5/13), 113 So.3d 175, 183). This risk-utility balancing test requires consideration of four factors: "[a.] the utility of the complained-of condition; [b.] the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; [c.] the cost of preventing the harm; and [d.] the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature." *Id.*

**a.      *Utility of the Complained-Of Condition***

Regarding the first factor, the utility of the complained-of condition, the Louisiana Supreme Court has explained that if a defect "was meant to be there, it

often will have social utility, and in the balancing test, weigh against a finding that the premises was unsafe." *Farrell v. Circle K Stores, Inc.*, 2022-00849, p. 7 (La. 3/17/23), 359 So.3d 467, 474, However, when "[t]he alleged defect was not intended nor present by design," then this weighs against a finding of utility. *Id.* Here, there is no evidence the hole was intended to be there, nor do we otherwise find any usefulness to its presence.

**b.** **Likelihood and Magnitude of the Harm, Including the Obviousness and Apparentness of the Condition**

As the Louisiana First Circuit Court of Appeal has explained in discussing this factor:

> The likelihood of the harm factor asks the degree to which the condition will likely cause harm. If it is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably dangerous. The magnitude of harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each.

*Rainey v. Knight*, 2023-0133, p. 8 (La. App. 1 Cir. 11/3/23), 378 So.3d 116, 124. Additionally, the risk-utility balancing test includes consideration of the obviousness and apparentness of the condition because Louisiana jurisprudence has previously held that "a defendant generally does not have a duty to protect against an open and obvious hazard." *George v. ABC Ins. Co.*, 2022-0148, p. 8 (La. App. 4 Cir. 10/26/22), 351 So.3d 447, 454 (citing *Scarberry v. Entergy Corp.*, 2013-0214, p. 10 (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 204). For a defendant to not have a duty to protect, the hazard must "be one that is open and obvious to all, *i.e.*, everyone who may potentially encounter it." *Id.* at p. 9, 351 So.3d at 454. The open and obvious inquiry "focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge." *Id.* at p. 9, 351 So.3d at 454-55 (quoting

24

*Hooper v. Brown*, 2015-0339, p. 9 (La. App. 4 Cir. 5/22/15), 171 So.3d 995, 1001). That is, a plaintiff's knowledge about a defect "is not necessarily conclusive that the defective condition was open and obvious to all who encountered it." *Id.* at p. 10, 351 So.3d at 455 (citing *Romain v. Brooks Restaurants, Inc.*, 2020-0243, p. 5 (La. App. 4 Cir. 11/18/20), 311 So.3d 428, 432).

In discussing the open and obviousness inquiry, however, the Louisiana Supreme Court has recently described it as a "figment of judicial imagination" and more narrowly held that "[t]here is, *with limited exception*, the duty to exercise reasonable care and to keep that which is within our custody free from an unreasonable risk of harm." *Farrell*, 2022-00849, p. 8, 13, 359 So.3d at 475, 478 (emphasis added). In fact, the Louisiana Supreme Court even stated that "it is inaccurate to profess that a defendant generally does not have a duty to protect against an open an obvious condition" because this inquiry "falls within the ambit of the second factor of the risk/utility balancing test, which considers the likelihood and magnitude of the harm, and it is not a consideration for determining the legal question of the existence of a duty." *Id.* at pp. 12-13, 359 So.3d at 478. With these precepts in mind, we consider the evidence presented in connection with SWBNO's and Entergy's motions for summary judgment.

The summary judgment record established that Mrs. Haynes knew about the hole; but Mrs. Haynes' deposition testimony calls into question whether the hole would be open and obvious to others who encountered it, particularly at night which is the time of day when Mrs. Haynes fell. According to Mrs. Haynes, by the date she fell into the hole, grass had grown over the hole so as to obscure its presence. Further, Mrs. Haynes could not recall seeing caution barrels around the hole on the night of her fall, and both she and Mr. Haynes testified that the caution

25

barrels were not always in place around the hole to mark it. Additionally, the photograph which Mrs. Haynes described as having been taken by her daughter after she fell into the hole is not dispositive of this issue: the photograph appears to show Mrs. Haynes with her left leg underneath her in the hole and her right leg on the adjacent sidewalk, and it shows grass and/or weeds on one side of Mrs. Haynes. The photograph is a close-up of Mrs. Haynes though, so it does not affirmatively depict whether there were barrels around the hole. As stated previously, SWBNO argued that the April 2017 Google Street View image of the Haynes' former property, which depicts the hole barricaded by caution barrels and tape, established that the hole was open and obvious. While that image is illustrative in depicting the Haynes' former home and the existence of caution barrels and tape around the hole in April 2017, it is not dispositive as to the condition of the area at the time of Mrs. Haynes' fall months later in August 2017. *See Lincoln v. Acadian Plumbing & Drain, LLC*, 2017-684, p. 7 (La. App. 5 Cir. 5/16/18), 247 So.3d 205, 211. The summary judgment record fails to establish that caution barrels and tape were still around the hole when Mrs. Haynes fell into it so as to render the hole an open and obvious condition.

Moreover, the photograph of Mrs. Haynes on the night of the accident shows that at least part of her body was inside the hole. During her deposition, Mrs. Haynes described the hole as "large" and "[b]ig enough for [her] to go in." A hole of that size is likely to cause harm, thus weighing in favor that it might be an unreasonably dangerous condition.

### c. Cost of Preventing the Harm

Turning to the risk/utility balancing test's third factor, the cost of prevention, we find the summary judgment record is devoid of any such evidence. Thus, this

Court is unable to consider this factor in applying the risk/utility balancing test. *See Farrell*, 2022-00849, p. 14, 359 So.3d at 479.

> ### d. Nature of Plaintiff's Activities in Terms of Social Utility or Whether the Activities Were Dangerous by Nature

The fourth and final factor of the risk/utility balancing test involves a consideration of the nature of the plaintiff's activity in terms of social utility or whether the activities were dangerous by nature. In this case, Mrs. Haynes was walking to retrieve important paperwork from her van as requested by a police officer after a motorist crashed into the van. Mrs. Haynes testified that she walked that particular path that night to avoid glass in the street from the aforementioned crash. This activity had social utility and was not dangerous by nature.

After applying the risk/utility balancing test, we find that Mrs. Haynes established a genuine issue of material fact as to whether the hole created an unreasonable risk of harm. Next, we turn to the third element of a custodial negligence claim.

### Knew or Should Have Known

The third custodial negligence element is whether "the defendant knew or should have known that the vice or defect presented an unreasonable risk of harm." That is, the defendant must have had actual or constructive knowledge of the defect. *Cipolla v. Cox Commc'ns La., LLC*, 2019-0509, p. 10 (La. App. 4 Cir. 8/5/20), 305 So.3d 911, 918 (citing *Encalade v. A.H.G Sols., LLC*, 2016-0357, p. 8 (La. App. 4 Cir. 11/16/16), 204 So.3d 661, 666). Constructive knowledge is when "the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury." *Id.*

27

(quoting *Russell v. Forest Isle, Inc.*, 2018-0602, p. 5 (La. App. 4 Cir. 12/5/18), 261 So.3d 47, 50).

The summary judgment record concerning SWBNO indicates that SWBNO had actual knowledge of the hole. In support of its Motion for Summary Judgment, SWBNO attached Mrs. Haynes' deposition, wherein she testified that prior to the fall, Mr. Haynes had been calling SWBNO "to have them come out and fix the repairs that they started" and "telling them [to] come and fix the property." Mrs. Haynes also testified that SWBNO's caution barrels were present on the property starting in at least September 2016 when her husband reported to SWBNO a depression in the sidewalk in front of the home. Additionally, SWBNO attached the transcript of Mr. Haynes' deposition, during which he testified that he first reported a problem with the sidewalk adjacent to the hole in a September 6, 2016 service request that he submitted to SWBNO. Mr. Haynes also testified about subsequent service requests regarding the issue. Moreover, in her deposition, Mrs. Haynes testified that the hole was covered with grass on the night of her fall, which could establish constructive knowledge on the part of SWBNO and Entergy because this shows that the hole "existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of [its] existence in general and could have guarded the public from injury." *Cipolla*, 2019-0509, p. 10, 305 So.3d at 918 (quoting *Russell v. Forest Isle, Inc.*, 2018-0602, p. 5 (La. App. 4 Cir. 12/5/18), 261 So.3d 47, 50). Thus, we find that Mrs. Haynes demonstrated a genuine issue of material fact about the knowledge, whether actual or constructive, that SWBNO and Entergy had regarding the presence of the hole.

*Damages*

The fourth and final custodial negligence element is whether "the defect caused the plaintiff's damages." In opposing the motions for summary judgment filed by SWBNO and Entergy, Mrs. Haynes did not offer any medical records or other evidence from her treating physicians about the injuries she allegedly sustained after she fell into the hole; but she did offer her deposition testimony. During her deposition, Mrs. Haynes testified that she went to the emergency room after falling into the hole because she felt pain on the left side of her body, particularly in her leg and knee. Mrs. Haynes testified that she subsequently had to begin physical therapy in September 2017 and ultimately had to undergo surgery on her spine as a result of the fall. Neither SWBNO nor Entergy presented evidence in conjunction with their motions for summary judgment to refute Mrs. Haynes' testimony. In light of the foregoing, we find that Mrs. Haynes established a genuine issue of material fact regarding her damages, thereby precluding summary judgment in favor of SWBNO and Entergy.

## DECREE

For the foregoing reasons, we affirm in part, reverse in part, and remand. Specifically, we affirm the trial court's July 14, 2023 judgment, which granted Drennan's Motion for Summary Judgment. However, finding that there remain genuine issues of material fact regarding SWBNO's and Entergy's liability, we reverse the trial court's judgments rendered on July 17, 2023, and July 20, 2023, which granted the motions for summary judgment filed by Entergy and SWBNO, respectively. Having reversed those judgments, we remand this matter for further proceedings consistent with this Opinion.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED**